**Richard Dale WEDDLE, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 5318.

Supreme Court of Wyoming.

Dec. 16, 1980.

Blair J. Trautwein, of Hathaway, Speight & Kunz, Cheyenne and Robert M. McRae,

of McRae & DeLand, Salt Lake City, Utah, an attorney in good standing in the State of Utah and admitted specially for the purposes of this case upon the motion of Mr. Trautwein, signed the brief and Mr. McRae appeared in oral argument on behalf of appellant.

John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Criminal Division and Allen C. Johnson, Senior Asst. Atty. Gen., Cheyenne, signed the brief, and Mr. Johnson appeared in oral argument on behalf of appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice.

Appellant–defendant appeals from a judgment and sentence rendered after a jury found him guilty of sexual assault in the first degree in violation of § 6–4–302(a), W.S.1977, and of aggravated assault with a dangerous weapon in violation of § 6–4–506(b), W.S.1977. Appellant contends that reversible error exists in this case because: (1) there was insufficient evidence to sustain the conviction; (2) § 6–4–302(a) is unconstitutionally vague; (3) the demeanor of the trial judge and the manner in which the proceedings were conducted unfairly prejudiced the jury and prevented appellant from receiving a fair trial; (4) the trial court ruled that appellant's pretrial motions were abandoned, and thus denied, on the ground that appellant failed to personally appear at the hearing thereon; (5) appellant's motion to suppress evidence obtained as a result of a warrantless entry into appellant's trailer home was denied; and (6) appellant's motion for a change of venue was denied.

We affirm.

## SUFFICIENCY OF THE EVIDENCE

█ An appeal of a jury verdict must surmount our oft–repeated admonition that in passing upon the sufficiency of the evidence to support a jury verdict of guilty we must review the evidence in a light most favorable to the State, together with the reasonable inferences that may be drawn from that evidence whether direct or circumstantial, or both, and we must disregard evidence in conflict therewith. *Tucker v. State*, Wyo., 594 P.2d 470 (1979); *Padilla v. State*, Wyo., 601 P.2d 189 (1979); *Mainville v. State*, Wyo., 607 P.2d 339 (1980); *Fitzgerald v. State*, Wyo., 599 P.2d 572 (1979).

Viewing the evidence in this fashion, it reflects the following. The 26–year–old victim was working in a restaurant at Jackson. After work on July 22, 1979, she went to a party in a condominium at Teton Village. She left the party at about 1:00 a. m. July 23, 1979 and started to walk home. Two men (later identified as appellant and Daniel Ross Morris) driving a pickup truck offered her a ride. She refused. They were intoxicated. They drove off but returned and ordered her into the pickup at shotgun point. Appellant held the gun. Appellant put a cap over her head, then replaced it with a paper bag. They disregarded her requests to let her go. They drove to a trailer and forced her to enter with the gun in her back. Morris left for a few minutes to "go to a store." When he returned, they took the sack from her head, put gauze around her eyes and adhesive tape around her eyes and head. They taped her wrists behind her, but later appellant cut the tape. Each had sexual intercourse with her on two occasions and fellatio with her on one occasion. Appellant had anal intercourse with her on one occasion. She did not resist or cry out because she was "afraid of being killed." During the incidents, the gauze was pulled away from her eyes. At about 5:00 a. m. appellant and Morris fell asleep, and victim picked up the shotgun and ran naked from the trailer. She asked George Harris, who was hooking up his camper nearby, to help her, telling him she had been raped. He took her to his camper where his wife provided her with a blanket, and he called the police.

The evidence was sufficient to substantiate the elements of the two crimes with which appellant was charged. Appellant argues that there are conflicts between victim's testimony and appellant's testimony in

such pertinent areas as use of force and actual penetration. He also asks that victim's testimony be discounted because of her use of drugs and alcohol.[1] These are factual matters which were presented to and acted upon by the jury. The evidence was sufficient, when viewed by the standard set out supra, to form a basis for a finding by a jury of guilt beyond a reasonable doubt. It is not for us to substitute our judgment for that of the jury in making the determination of whether or not the evidence did establish guilt beyond a reasonable doubt. *Nisonger v. State*, Wyo., 581 P.2d 1094 (1978).

### CONSTITUTIONALITY OF § 6–4–302(a), W.S.1977

The general law concerning that which has to do with the unconstitutionality of a legislative enactment on the basis of vagueness was recently set forth in *Sorenson v. State*, Wyo., 604 P.2d 1031 (1979). Also see *Sanchez v. State*, Wyo., 567 P.2d 270 (1977). We need not repeat it here, nor need we apply the principles there set forth to statutes which are not involved in the disposition of this case–as is requested by appellant.

 ▮▮▮ Although appellant was convicted of sexual assault in the first degree in violation of § 6–4–302(a), his argument in this respect concerns specific language in § 6–4–303(a)(ii) and § 6–4–303(a)(iv), W.S.1977 (sexual assault in the second degree). Ordinarily we do not decide questions which are unnecessary to the disposition of the case on appeal. *Wallace v. Casper Adjustment Service*, Wyo., 500 P.2d 72 (1972); *Druley v.*

*Houdesheldt*, 75 Wyo. 155, 294 P.2d 351 (1956), rehearing denied 75 Wyo. 155, 166, 296 P.2d 251 (1956); *Gortmaker v. Seaton*, 252 Or. 440, 450 P.2d 547 (1969); *Lorland Civic Association v. DiMatteo*, 10 Mich.App. 129, 157 N.W.2d 1 (1968). The language of § 6–4–302(a)[2] is sufficiently plain and clear as to negative the necessity for a reasonable man to guess at its meaning. A person of ordinary intelligence can determine from its language the acts or conduct required or forbidden with reasonable certainty. Appellant should understand without uncertainty from the language of § 6–4–302(a) that it proscribed sexual penetration or sexual intrusion on a victim through the actual application of physical force reasonably calculated to cause submission or through threats of death or serious bodily injury. The language of § 6–4–302(a) is not unconstitutionally vague. For the purposes of this case, we need not address the constitutionality of other statutes including § 6–4–303.

### PREJUDICE RESULTING FROM DEMEANOR OF TRIAL JUDGE AND MANNER OF CONDUCTION OF PROCEEDINGS

Appellant points to four trial incidents which he contends jeopardized his right to a trial before an impartial jury.

The first occurred when appellant's attorney advised the judge, in chambers, that appellant expressed concern over the possibility of one of the jurors reading that written by the prosecutor at the counsel table. The court noted that he had been

---

1. Appellant testified to his own extensive use of alcohol and drugs during the pertinent period.

2. Section 6–4–302(a) provides:
 "(a) Any actor who inflicts sexual penetration or sexual intrusion on a victim commits a sexual assault in the first degree if:
 "(i) The actor causes submission of the victim through the actual application, reasonably calculated to cause submission of the victim, of physical force or forcible confinement; or
 "(ii) The actor causes submission of the victim by threat of death, serious bodily injury,

extreme physical pain or kidnapping to be inflicted on anyone and the victim reasonably believes that the actor has the present ability to execute these threats; or
 "(iii) The victim is physically helpless, and the actor knows or should reasonably know the victim is physically helpless and the victim has not consented; [or]
 "(iv) The actor knows or should reasonably know that the victim through a mental illness, mental deficiency or developmental disability is incapable of appraising the nature of the victim's conduct."

aware of the problem which was occasioned by the physical set up of the courtroom and that he had tested the ability of a juror to read material on the counsel table and found that it could not be done. The judge also asked the indicated juror if she had read anything on the counsel table, and she said she could not do so. However, as the judge was speaking on the matter in chambers, the following was said:

"Further, that I have made an independent observation from time to time and unless you have binocular vision you cannot read printed matter from the jury box on counsel table.

"MR. WEDDLE: Not if it's on the table.

"THE COURT: Did I ask you to say anything?

"MR. WEDDLE: No, sir.

"THE COURT: You be careful, Mr. Weddle, with me.

"MR. WEDDLE: Yes, sir. I'm sorry.

"THE COURT: Well, you better be or I'll slap you in that slammer right now. Don't you dare interrupt me or do that ever again. You will speak to me when I speak to you and ask you to be heard. Do you understand that?

"MR. WEDDLE: Yes, sir."

Subsequently, appellant, out of presence of the jury, moved for a mistrial inasmuch as he believed it possible for the jury to have heard the court "dressing down" appellant, the door to the jury room being open and the jury room being down the hall from the judge's chambers. The judge then inquired of the jury as follows:

"THE COURT: Let the record show that the jury is present. Now, this morning before we started, for those of you who do not know me, and I guess that's nobody; I have a propensity to say what I think, and sometimes in loud tones. I was loud this morning before we came into this courtroom and I was chewing someone out. I have a propensity to do that, too.

"The jury room door was open, I have been advised. I want to know if anybody on the jury heard anything I said when I was in my chambers talking before we started this morning's session. If so, raise your hand."

When none of the jurors so responded, the judge denied the motion for mistrial.

■ Although the trial judge's actions and language to the appellant were intemperate and manifested a breach of judicial restraint, the jury was not aware of the actions and language. The fact that the juror did not read the material on the counsel table was established. Appellant has not directed us to anything in the incident which would jeopardize the impartiality of the jury. The jury was simply unaware of the reprimand by the judge, and it was not subjected to influence by anything on the counsel table. Appellant was not prejudiced by the incident. We can reverse only for prejudicial error. *Waters v. Trenckmann*, Wyo., 503 P.2d 1187 (1972); *Pure Gas and Chemical Company v. Cook*, Wyo., 526 P.2d 986 (1974).

The second and third incidents which appellant contends had improper prejudicial effect on the jury were the following rulings of the court: (1) after the arresting officer testified to the arrest, he stated:

"We took them back over by Mr. Harris' trailer, and I asked [victim] if this was the two men she was talking about and she said yes.

"MR. BOMMER: Objection—Hearsay as to what [victim said].

"THE COURT: That's overruled."

(2) Charles Swinger was called as a witness by the prosecution.[3] Appellant objected on the ground that the,

" * * * [w]itness was not listed in accordance with this Court's Order.

"THE COURT: But I ruled on that Motion in chambers prior to trial, and your objection is noted for the record. It's overruled."

---

3. Swinger testified to the sale of tape and gauze to a man who was customarily in the store with appellant, and he identified the tape and gauze found in appellant's trailer as that sold to this man in the early hours of July 23, 1979.

Appellant does not argue that the rulings are reversible error in themselves, but refers to them as evidence of actions by the court which improperly prejudiced the jury against appellant. On the face of it, we do not reach such conclusion, and appellant does not direct us to any authority and does not present to us any cogent argument to support his contention. We need not notice a claimed error unsupported by available precedent or cogent argument. *Scherling v. Kilgore*, Wyo., 599 P.2d 1352 (1979); *Peterson v. First National Bank of Lander*, Wyo., 579 P.2d 1038 (1978).

The other incident which appellant contends jeopardized his right to a fair trial before an impartial jury was the judge's comments to the jury when, during its deliberation, it asked for a transcript of the testimony of the victim and that of appellant. In a lengthy answer to its request, the trial judge referred to a previous case in which he simply told the jury to read the instructions when it asked for further information relative to a valid search. He commented that he probably was not much help to that jury and that he was going to try to be of more help to this jury. During this discourse, he said, "the jury in that case, by the way, convicted and the Supreme Court confirmed the conviction." He also stated that the question of whether or not the requested transcript would be furnished was within his discretion; that it would probably take most of the weekend (the case went to the jury on a Friday) to place the reporter's notes of the testimony into a transcript; and that the jury would have to be sequestered during that time. Accordingly, he asked the jury to reconsider their request before he exercised his discretion relative thereto. After further deliberation, the jury withdrew the request.

Appellant argues that "the obvious implication" from the judge's reference to a conviction in the prior case commented on by him was that a conviction would be a proper verdict in this case. An "obvious implication" is not apparent to us. The comment may have been unnecessary, but in the context in which made, the suggested implication is not present. Gratuitous comments by the trial judge are not ipso facto error. *Deeter v. State*, Wyo., 500 P.2d 68 (1972).

Appellant also argues that the mention of the requirement for sequestration had the effect of discouraging a delay in the return of a verdict, and that the statement: "Now, the law says you are to stay together until you return a verdict" had a "coercive effect" on the jury. After receiving the request for a transcript of the testimony of two witnesses, the judge evidenced an inclination to accede to the request. He first informed the jury of the consequences thereof. The information given to the jury was not incorrect. There is no suggestion that an early verdict would be detrimental rather than beneficial to appellant. Finally in this respect, after the court had responded to the jury request and after the jury had withdrawn its request, the court inquired of counsel if they had "anything they wish to put in the record at this time?" The State said it did not and the appellant said he did not. An opportunity was thus given for a timely and proper objection. Appellant made none, and he cannot predicate error thereon at this time. *Snyder v. State*, Wyo., 599 P.2d 1338 (1979); *Fuller v. State*, Wyo., 568 P.2d 900 (1977).

## TREATMENT OF PRETRIAL MOTIONS

Appellant and Morris were jointly charged in a seven–count information. Appellant filed a number of pretrial motions which were scheduled to be heard on November 6, 1979. Morris also filed a number of motions which were scheduled to be heard at the same time. Appellant's motions and Morris' motions were duplications for the most part. The only motions of appellant which were not similar to those of Morris were a motion directed at an alleged improper restriction of cross–examination of victim at the preliminary hearing and a motion to transfer the case to juvenile court.

At the hearing on November 6, 1979, the trial court ruled that all of appellant's motions "are deemed abandoned because of

the Defendant Weddle's nonpresence at the hearing, and therefore said motions are denied." Appellant's attorney was present at the hearing and contended that Rule 42, W.R.Cr.P. did not require appellant to be present, therefore, he did not notify appellant to be present. Appellant had been released on bail.

Morris' attorney argued his motions, and in disregard of his ruling, the trial judge requested appellant's attorney to join in the argument on separate motions by appellant and by Morris to suppress evidence.

Without specifying the action taken on each motion, we note that the hearing resulted in: (1) appellant obtaining all material at which discovery–type motions were directed; (2) the filing of an amended information which reduced the counts to two; (3) the denial of the motion directed at the constitutionality of § 6–4–302(a) (one of the issues here presented on appeal, supra); (4) denial of the motion for change in venue (also one of the issues here presented on appeal, infra); (5) denial of the motion to suppress evidence resulting from the search of the trailer (also one of the issues here presented on appeal, infra); and (6) no consideration by the trial court of appellant's motion directed at an alleged improper restriction of cross–examination at the preliminary hearing and his motion to transfer the case to juvenile court. This is not the usual case in which a defendant complains of proceedings had in his absence. Rather, the complaint is that the court would not permit him to waive his presence at pretrial activities.

> "A leading principle that pervades the entire law of criminal procedure is that, after indictment found, nothing shall be done in the absence of the prisoner. * * * "
> *Lewis v. United States,* 146 U.S. 370, 13 S.Ct. 136, 137, 36 L.Ed. 1011 (1892).

The application of that principle as set forth in 1892 has been considerably restricted by the holdings in *Diaz v. United States,* 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912); *Snyder v. Massachusetts,* 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934); and *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057,

25 L.Ed.2d 353 (1970) to the effect that presence at trial is a privilege of the prisoner which may be lost by consent or misconduct. Rule 42, W.R.Cr.P. summarizes the present requirements:

> "The defendant shall be present at the arraignment, at every stage of the trial, including the impaneling of the jury, and the return of the verdict and at the imposition of sentence except as otherwise provided by these rules. In prosecution for offenses not punishable by death, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict. A corporation may appear by counsel for all purposes. In prosecutions of offenses punishable by fine or by imprisonment for not more than one (1) year, or both, the court, with the written consent of the defendant, may permit arraignment, plea, and imposition of sentence in a defendant's absence. The defendant's presence is not required at a reduction of sentence under Rule 36."

The rule was taken verbatim from Rule 43 of the Federal Rules of Criminal Procedure, except that the word "trial" is included after the word "plea" in the next to last sentence in the Federal Rules. In 1975 Rule 43 of the Federal Rules of Criminal Procedure was changed considerably, and now includes the provision that a defendant need not be present "at a conference or argument upon a question of law."

▪ In any event, our Rule 42 mandates presence of the defendant only "at the arraignment, every stage *of the trial,* return of the verdict, and imposition of sentence," subject, however, to certain designated exceptions. It does not include a requirement of defendant's presence at proceedings prior to trial, other than the arraignment. Certainly, a defendant may relinquish his right to be present at pretrial motions where he is represented by counsel and where the issue is only one of law. *Joseph v. State,* 236 Ind. 529, 141 N.E.2d 109 (1957), cert. denied 359 U.S. 117, 79 S.Ct. 720, 3 L.Ed.2d 673 (1959); *United States v. Gradsky,* 5 Cir.

1970, 434 F.2d 880, cert. denied 409 U.S. 894, 93 S.Ct. 203, 34 L.Ed.2d 151 (1972); *United States v. Lopez*, D.C.N.Y., 328 F.Supp. 1077 (1971); *Glouser v. United States*, 8 Cir. 1961, 296 F.2d 853, cert. denied 369 U.S. 825, 82 S.Ct. 840, 7 L.Ed.2d 789 (1962).

■ Inasmuch as our rule does not require presence of the defendant at all pretrial motions and inasmuch as the defendant could waive the requirement if one did exist, the trial court erred in dismissing appellant's pretrial motions for the reason that appellant was not personally present at the hearing thereon. However, a question exists as to whether or not the error was harmless, i. e., not prejudicial, and as to whether or not a hearing on such motions is actually required.

The error would be harmless if no prejudice resulted to appellant from it. *Madrid v. State*, Wyo., 592 P.2d 709 (1979); *Jones v. State*, Wyo., 580 P.2d 1150 (1978); *Daellenbach v. State*, Wyo., 562 P.2d 679 (1977); Rule 49, W.R.Cr.P. As previously indicated, the only rulings on appellant's pretrial motions of possible prejudice to him are: (1) those having to do with change of venue, suppression of evidence, and dismissal of information on § 6–4–302(a) being unconstitutionally vague–all of which are presented to us on their merits in this appeal; and (2) the two motions upon which argument was not received at the hearing, i. e., regarding limitation of cross–examination at the preliminary hearing and regarding transfer of the case to juvenile court.

With reference to the first group of motions, we do not find material prejudice to appellant in the proceedings relative thereto. There may have been such prejudice in the decision as to the merits thereof, but that is addressed in the other appropriate sections of this opinion.

With reference to the second group of motions, the motion to transfer the case to juvenile court reflected on its face that appellant was over the age of majority and was therefore not subject to juvenile court proceedings,[4] and the motion directed at improper restriction of cross–examination at the preliminary hearing also reflected on its face the propriety of the restriction. It reflected that the concern was the refusal of the justice conducting the hearing to allow a question to the victim concerning sexual intercourse had by her previous to the sexual assault alleged in the complaint. The motion reflected that a transcript of the proceedings was not then available, and one is not in the record presented to us. It would seem that the question was beyond the scope of direct examination, and that no attempt was made to call the victim as a witness of appellant. The purpose indicated in the motion for the question was to contest her credibility. As such, it was not proper under Rule 608, W.R.E., not having to do with her character for truthfulness or of her conviction of a crime. Nor was it pursuant to the procedure established by the legislature to be followed when a victim's character is to be offered as evidence in a prosecution for sexual assault.[5] Al-

4. In his motion, appellant recognizes this deficiency, but he attacks the age of majority (19) as set by the legislature as an unconstitutional denial of equal protection under the law. Such attack has not been pursued in this appeal.

5. Section 6–4–312, W.S.1977, provides:
 "(a) In any prosecution under W.S. 6–63.2 through 6–63.5 [§§ 6–4–302 to 6–4–305] or for any lesser included offense, if evidence of the prior sexual conduct of the victim, reputation evidence or opinion evidence as to the character of the victim is to be offered the following procedure shall be used:
 "(i) A written motion shall be made by the defendant to the court at least ten (10) days prior to the trial stating that the defense has

an offer of proof of the relevancy of evidence of the sexual conduct of the victim and its relevancy to the defense;
 "(ii) The written motion shall be accompanied by an affidavit or affidavits in which the offer of proof shall be stated;
 "(iii) If the court finds the offer of proof sufficient, the court shall order a hearing in chambers, and at the hearing allow the questioning of the victim regarding the offer of proof made by the defendant and other pertinent evidence;
 "(iv) At the conclusion of the hearing, if the court finds that the probative value of the evidence is substantially outweighed by the probability that its admission will create a substantial danger of undue prejudice, the

though the Wyoming Rules of Evidence are not applicable to preliminary examination in criminal cases, Rule 1101(b)(3), W.R.E., it has been held that cross–examination is properly to be limited at preliminary hearing to the scope of direct examination, *Coleman v. Burnett*, D.C.Cir., 477 F.2d 1187 (1973). Section 6–4–312, setting forth the procedure to be followed in offering victim's character into evidence, concerns *trial* procedure, but it indicates the questionable probative value of such evidence.

Rule 7(b), W.R.Cr.P. gives a defendant the right to cross–examine witnesses. It provides:

"(b) *Probable cause finding.*–If from the evidence it appears that there is probable cause to believe that an offense has been committed and that the defendant committed it, the commissioner shall forthwith hold him to answer in district court. The finding of probable cause may be based upon hearsay evidence in whole or in part. *The defendant may cross–examine witnesses against him* and may introduce evidence in his own behalf. Objections to evidence on the ground that it was acquired by unlawful means are not properly made at the preliminary examination. Motions to suppress must be made to the trial court as provided in Rule 16 and Rule 40(e)." (Emphasis supplied.)

 The value of cross–examination at a preliminary hearing is questionable inasmuch as hearsay evidence is admissible, and cross–examination on hearsay evidence is almost impossible. The purpose of a preliminary hearing is to establish the existence of probable cause to hold the accused for prosecution. Although some discovery results as a by–product of the hearing, it is not a purpose of the hearing. *United States v. Heap*, 2 Cir. 1965, 345 F.2d 170;

*Sciortino v. Zampano*, 2 Cir. 1967, 385 F.2d 132, cert. denied 390 U.S. 906, 88 S.Ct. 820, 19 L.Ed.2d 872 (1968); *United States v. Cruz*, 5 Cir. 1973, 478 F.2d 408, rehearing denied 478 F.2d 1403 (1973). Means of discovery are provided in Rule 18, W.R.Cr.P., and appellant made use of them.

 In consideration of all of these factors, it appears that the denial of cross–examination complained of in appellant's motion was not improper under the facts of this case, and appellant was not prejudiced thereby.

Inasmuch as appellant either received the relief requested in the motions denied by the trial court for the reason that appellant was not present at the time of argument thereon, or he was not otherwise prejudiced by the denial thereof, or he is presenting the merits thereof to us in this appeal, we do not find reversible error in such denial.

## SUPPRESSION OF EVIDENCE

After the police arrived in response to the call from Mr. Harris, they briefly interviewed the victim, went to the trailer, found the door unlocked, entered the trailer without warning and arrested appellant and Daniel R. Morris in the trailer. Thereafter a search warrant was issued, and the trailer was searched pursuant to it. Articles obtained in the search were introduced into evidence. They included the clothing worn by victim immediately before the assault, the baseball cap placed over her head, a paper sack, blankets, and bedding.

The affidavit upon which the search warrant was issued was premised on information furnished by victim and by the officers who arrested appellant. Appellant argued at the motion to suppress and in this appeal that the entry into the trailer without a warrant to arrest was illegal and that, thus,

evidence shall be admissible pursuant to this section. The court may make an order stating what evidence may be introduced by the defendant, which order may include the nature of the questions to be permitted.

"(b) This section does not limit the introduction of evidence as to prior sexual conduct of the victim with the actor.

"(c) Any motion or affidavit submitted pursuant to this section is privileged information and shall not be released or made available for public use or scrutiny."

the search warrant based on observations made upon such entry was improper, and the items obtained thereunder were inadmissible as resulting from the "poisonous tree."

The trial court held that "exigent circumstances" existed at the time which warranted the warrantless entry into the trailer for the purpose of arrest. Accordingly, the motion to suppress the evidence was denied. The holding was proper.

The present status of the law in this respect is set forth in *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). It was there held that a warrantless entry cannot be made into a dwelling to make a "routine" felony arrest absent "exigent circumstances."[6] Conversely, such entry can be made if the arrest is not for a "routine" felony or if "exigent circumstances" exist.

In this case, the trial court found the existence of "exigent circumstances". Such circumstances are emergency circumstances. Every factual situation which could give rise to an emergency cannot be delineated in advance. Generally, if there is a reasonable possibility of injury or death if the entry not be made, or if there is a likelihood that the suspect will escape if the entry not be made, "exigent circumstances" exist. See *Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *Dorman v. United States*, D.C.Cir., 435 F.2d 385 (1970); *State v. Rubert*, 46 Or.App. 843, 612 P.2d 771 (1980); *State v. Fauver*, Hawaii App., 612 P.2d 119 (1980); *State v. Ferguson*, 119 Ariz. 55, 579 P.2d 559 (1978); *Howard v. State*, Tenn.Cr.App., 599 S.W.2d 280 (1980); *People v. Baca*, Colo., 600 P.2d 770 (1979); *People v. Sakalas*, 85 Ill.App.3d 59, 40 Ill. Dec. 29, 405 N.E.2d 1121 (1980).

In answer to the question "Why did you not obtain a warrant prior to making the arrest?" Officer Stanley Bruhn, one of the arresting officers, responded:

"At the time I made contact with the complaintant [sic] she told me the two

individuals had been asleep when she left the trailer, but she didn't know whether they were awake.

"Now, it was my thinking that if they awoke and found that the victim was gone, they would immediately leave because they would assume she was making a complaint.

"Also, she had told me they used a shotgun in the incident of the previous night, and it was my opinion that probably they were still armed with another gun. The experiences I have had is that when a man has got one gun he's got more than one. They used the gun to further their ends during the night, and I thought that if we gave these people time to get away there would be great danger to ourselves and other surrounding people in making an arrest when they were prepared for us to come in. It was my independent opinion that they would probably resist since they have shown that they didn't mind using a gun as a threat, and I knew that if there was any shooting in the area there would be large numbers of people in a dangerous place where somebody could get killed quite easily including Officer Stephenson and myself, and there was a possibility we would have to shoot them and I prefer not to shoot anybody if I can avoid it."

The trial court found the thoughts of Officer Bruhn to be reasonable, and we agree. Under the circumstances of this case, "exigent circumstances" existed and the warrantless entry into the trailer was proper. Therefore, the refusal to suppress the evidence in question was not error.

CHANGE OF VENUE

To support his request for a change of venue, appellant presented copies of ten newspaper articles and radio broadcast transcripts. He did not contend that they were inaccurate. Appellant also presented testimony of a witness who took a survey or poll of 139 people in the community. It reflected such results as 57% heard of the

---

**6.** Four dissenting members of the Court found this test to be too restrictive.

case; 35% had discussed it with friends or relatives; 78% "followed events subsequent to the alleged crime"; 8% had an opinion that appellant was guilty, 4% that he was innocent, and 88% had no opinion The record does not reflect the news articles to be other than objective; that there was difficulty in selecting an impartial jury; that appellant exercised all of his peremptory challenges; or that appellant objected to the jury selection.

Rule 23(a), W.R.Cr.P. provides:

" * * * The court upon motion of the defendant made at least 15 days prior to the date set for trial, shall transfer the proceeding as to him to another county, whether or not such county is specified in the defendant's motion, *if the court is satisfied that there exists* within the county where the prosecution is pending *so great a prejudice against the defendant that he cannot obtain a fair and impartial trial* in that county." (Emphasis supplied.)

The discretionary power of the court in this respect was explored and discussed in detail in *Collins v. State*, Wyo., 589 P.2d 1283 (1979). Without repeating all there said, we note that the totality of the circumstances in this case does not reflect the existence of prejudice in the empaneled jury. Pretrial publicity is not of itself inherently prejudicial.

Under Rule 23(a), W.R.Cr.P.,

" * * * [I]n order for a change of venue to be granted, the burden is upon the defendant to show prejudice so great or general as to prevent his receiving a fair and impartial trial and the decision is within the sound discretion of the trial judge. [Citations.] * * *" *Collins v. State,* supra, 589 P.2d at 1289.

The appellant has not here carried such a burden, and there is nothing in the record to indicate an abuse of discretion by the trial judge.

Affirmed.