**Mark Andrew HAIGHT, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 5697.**

Supreme Court of Wyoming.

Dec. 9, 1982.

Gerald M. Gallivan, Director, Wyoming Defender Aid Program, Karen A. Byrne, Kaye Willis, and Mark Workman, Student Interns, Laramie, for appellant.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Allen C. Johnson, Sr. Asst. Atty. Gen., and Michael L. Hubbard, Asst. Atty. Gen., Cheyenne, for appellee.

Before ROSE, C.J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

BROWN, Justice.

Appellant, Mark Haight, was convicted of two counts of aiding and abetting first degree sexual assault in violation of §§ 6–1–114 and 6–4–302(a)(i), W.S.1977, and one count of attempted first degree sexual as-

sault in violation of §§ 6–1–201, W.S.1977, Cum.Supp.1981, and 6–4–302(a)(i), W.S. 1977. Appellant contends that his constitutional rights were violated by the absence of the complaining witness at the preliminary hearing. He also contends that the evidence was insufficient to support his convictions.

We affirm.

## I

The complaining witness, a retarded woman with a severe hearing impairment, was not present at the preliminary hearing. At the beginning of the hearing, appellant moved for a continuance so that he could subpoena the complaining witness. The motion was denied. After the information was filed in district court, the appellant moved to return the case to county court for another preliminary hearing, based on the absence of the complaining witness at the hearing. The district court denied the motion.

Appellant states the issues concerning this part of the appeal as follows:

"A. The right to confront witnesses is a constitutional right under the fourteenth amendment which has been violated by the absence of the complaining witness at the preliminary hearing.

"B. The right to effective counsel is a sixth amendment constitutional right which has been violated because of the surprise and prejudice at trial created by the absence of the complaining witness at the preliminary hearing."

The right of confrontation which appellant is referring to is a Sixth Amendment right under the United States Constitution, which right has been made applicable to states through the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Appellant in his objections at the preliminary hearing did not argue a deprivation of his Sixth Amendment right to confront witnesses. He also failed to do so at the district court level when he moved for a new preliminary hearing, according to the district court's decision letter. "In oral argument, counsel expressly stated to the Court that they did not rest their argument on the right of confrontation under the Sixth Amendment." Because appellant did not argue these contentions below, we will not consider them now. An appellant cannot raise an issue for the first time on appeal. *ABC Builders, Inc. v. Phillips,* Wyo., 632 P.2d 925 (1981).

Appellant then argues that he had a right at the preliminary hearing to subpoena witnesses, under the Wyoming and United States Constitutions and under our Rules of Criminal Procedure. He argues that the violation of this right resulted in a deprivation of his Sixth Amendment right to effective assistance of counsel. Specifically, he alleges that he was surprised and prejudiced at trial because of the absence of the complaining witness at the preliminary hearing. Appellant cites *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). The rule in *Coleman* is that where a state has an adversarial preliminary hearing procedure similar to Alabama's, a preliminary hearing is a critical stage of the proceedings, and a defendant therefore has a right to be represented by an attorney.

Our rules do provide for an adversarial hearing. Rule 6, W.R.Cr.P., provides that a defendant is entitled to an attorney at every stage of the proceedings. Rule 7(b), W.R.Cr.P., provides in part:

" * * * The defendant may cross-examine witnesses against him and may introduce evidence in his own behalf. * * * "

Appellant seems to be arguing that since Rule 7(b), W.R.Cr.P., allows the defendant to cross-examine witnesses and to present evidence in his own behalf, then *Coleman v. Alabama* gives a defendant a constitutional right to unrestricted confrontation of witnesses and to introduce evidence at the preliminary hearing, because that is the only way that a defendant can receive effective assistance of counsel at trial.

According to *Coleman v. Alabama,* supra, there are four reasons an attorney should be present to represent a defendant at a pre-

liminary hearing, three of which are pertinent here. The first is that the lawyer's skilled examination and cross-examination of witnesses may expose weaknesses in the State's case that may lead the magistrate to refuse to bind the accused over. That reason does not apply here, since appellant does not assert that he is contesting the probable cause finding.

A second reason an attorney should be present at a preliminary hearing is that "skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the state's witnesses at trial." *Coleman v. Alabama,* supra, 399 U.S. at 9, 90 S.Ct. at 2003, 26 L.Ed.2d 397. The purpose of the second reason goes to defendant's right to confrontation. We will not allow appellant to reach the confrontation issue through the back door by arguing that he was denied effective assistance of counsel at trial because he could not confront the eyewitness at the preliminary hearing. Appellant did confront the witness at trial and subject her to cross-examination. If he lost a vital impeachment tool because he could not examine the witness at the preliminary hearing, that loss would have been apparent from the time of the hearing and appellant should not have waived his right-to-confrontation argument in the district court.

The third reason it helps to have an attorney present at the preliminary hearing is that trained counsel can more effectively discover the case against his client and better prepare for trial. However, this court has said several times that the only constitutional basis for a preliminary hearing is to insure against improper detention. *Weddle v. State,* Wyo., 621 P.2d 231 (1980); and *Thomas v. Justice Court of Washakie County,* Wyo., 538 P.2d 42 (1975).

"* * * The purpose of a preliminary hearing is to establish the existence of probable cause to hold the accused for prosecution. Although some discovery results as a byproduct of the hearing, it is not a purpose of the hearing. * * *" *Weddle v. State,* supra, at 239.

Another court described the purpose this way:

"* * * Although the preliminary hearing * * * may be a practical tool for discovery by the accused, the only legal justification for its existence is to protect innocent persons from languishing in jail on totally baseless accusations." *United States v. Mulligan,* 520 F.2d 1327, 1330 (6th Cir.1975), cert. denied 424 U.S. 919, 96 S.Ct. 1123, 47 L.Ed.2d 325 (1976).

■ We read *Coleman* to say that when an adversarial hearing is provided, it is important that counsel be there to take advantage of any benefit which might accrue to the defendant's case by the cross-examination of witnesses. We will not read *Coleman* to say that the State has to present a complaining witness and has to provide a discovery opportunity for defendant, and that unless the State does so, defendant's counsel cannot provide effective assistance. If we were to accept appellant's argument, we would turn the preliminary hearing into a required opportunity for the defense to prepare for trial:

"Conceding that the techniques mentioned in *Coleman* are important elements in the preparation of a case, and bearing in mind that our rule permits cross examination of state witnesses and the presentation of evidence in behalf of the defendant, so that it can properly be said that the preliminary examination is under Wyoming law a critical stage of the proceedings, we cannot conclude that the defense has a constitutional right to turn the preliminary examination into a full trial * * *." *Thomas v. Justice Court of Washakie County,* supra, at 48.

■ Appellant also argues that he had a right under the Rules of Criminal Procedure to subpoena witnesses. He claims that the county court violated those rules. Rule 7(b), W.R.Cr.P., provides in part: "The finding of probable cause may be based upon hearsay evidence in whole or in part." The county court obviously did not violate Rule 7(b), W.R.Cr.P. by basing its probable cause finding entirely on hearsay. Although appellant never specifically cites Rule 20, W.R.Cr.P., that rule does allow a

defendant to subpoena witnesses. However, appellant waited until the beginning of the hearing to move for a continuance to subpoena the complaining witness. The matter of continuance is within the discretion of the court. *Sims v. State,* Wyo., 530 P.2d 1176, 1181 (1975).

"Where a party seeks a continuance due to the absence of a witness, there must be a showing that the witness' testimony would be material were he allowed to testify, and that the moving party has used due diligence to procure the attendance of the witness * * *."

██ Here, the moving party failed to show due diligence, relying instead on an argument that the State had to produce the witness unless it could show that she was unavailable, thereby trying to force the State to produce a witness it did not have to produce. The appellant was in effect trying to make the State produce more evidence than it needed to.

" * * * What the defendant would have us believe to be an attempt to introduce witnesses in his own behalf was, in fact, an attempt to have the Government produce more witnesses than they felt was necessary to establish probable cause. * * * " *United States v. Hinkle,* 307 F.Supp. 117, 125 (D.D.C.1969).

The trial court did not abuse its discretion in refusing to grant the continuance to allow the subpoena.

## II

Appellant was convicted of two counts of aiding and abetting first-degree sexual assault. The other two people involved were Lonnie Wilson and Michael James Evans.[1] Appellant's second argument is that the evidence was insufficient to establish that appellant was an aider and abettor to two first-degree sexual assaults. Section 6–1–114, W.S.1977, provides:

"Every person who shall aid or abet in the commission of any felony, or who shall counsel, encourage, hire, command, or otherwise procure such felony to be committed, shall be deemed an accessory before the fact, and may be indicted, informed against, tried and convicted in the same manner as if he were a principal, and either before or after the principal offender is convicted or indicted or informed against; and upon such conviction he shall suffer the same punishment and penalties as are prescribed by law for the punishment of the principal."

Here, appellant moved for a judgment of acquittal, which the trial court denied.

"Our responsibility in considering the propriety of a ruling on a motion for judgment of acquittal is the same as that of the trial court. [Citation.] The question raised is the sufficiency of the evidence to sustain the charge, which is a matter to be determined within the sound discretion of the trial court. [Citations.] In making that determination the district court must assume the truth of the evidence of the State and give to the State the benefit of all legitimate inferences to be drawn from that evidence. * * * It is proper to grant a motion for judgment of acquittal only if there is no substantial evidence to sustain the material allegations relating to the offense that is charged. * * * " *Aragon v. State,* Wyo., 627 P.2d 599, 602 (1981)

██ The State asserted in its bill of particulars that it intended to prove appellant was an accessory to first degree sexual assaults because Haight physically restrained the woman in the back seat of a vehicle to prevent her escape or her summoning assistance. The bill of particulars also asserted that Haight was being charged as an accessory for "turning the victim over" to Wilson and Evans and standing as a lookout during the sexual assaults by Wilson and Evans. We hold that the evidence was insufficient for the jury to infer that appellant restrained the woman, but find that the evidence was sufficient for the jury to reasonably infer that appellant acted as a lookout, and for that reason will affirm the trial court's denial of the motion for a judgment of acquittal.

---

1. Wilson and Evans are black; Haight is white, with blond hair, facts which we mention because the testimony which we quote sometimes refers to "the blond" or "the white man."

There was evidence presented at trial that Evans drove to Lion's Park after they had picked up appellant at his home. Wilson and the complaining witness were also in the car. At some time while the car was at the park, a police car was in the park and close enough so that the complaining witness could see it. The State introduced evidence meant to show that appellant saw the police car and tried to hide the complaining witness.

The State also presented testimony that the complaining witness might have difficulty recalling, and that she had difficulty getting things in the proper order. The witness' testimony is so confusing as to time that no reasonable inference could be drawn concerning whether she saw the police car before, after, or in between the assaults.

"Q. All right. And where did you drive to in Lion's Park?

"A. Between the highway.

"Q. Did you park the car anywhere?

"A. Back behind a tree.

\* \* \* \* \* \*

"Q. Was there anything else around it?

"A. Yes, a Bronco.

"Q. All right. Was there anything beside the Bronco?

"A. Then they saw the policeman. That's what they said.

"Q. There was a police car there?

"A. Yes.

\* \* \* \* \* \*

"Q. All right. What happened in the back seat when that policeman came by?

"A. They had my head down. They pushed my head down.

"Q. Who did?

"A. Mike.

"Q. All right. Was anybody else there in the back seat with you?

"A. And then this blond one, yes.

"Q. Did the blond one do anything to you?

"A. He grabbed me on my neck.

"Q. What did he do when he grabbed you behind the neck?

"A. He pulled me down between his legs.

"Q. All right. And when that happened, did the police come up to the car?

"A. No.

"Q. Did they drive away?

"A. Yes.

"Q. All right. What happened then when they drove away?

"A. They said they was gone now, get dressed, or something.

"Q. Now, were you undressed at that time?

"A. Yes.

"Q. All right. Now let's go back a little bit before then. When you drove up to the park and stopped, where were you sitting?

"A. In the front.

"Q. And who was in the front seat with you?

"A. Mike, me, and Willie."

The State argues:

" * * * [T]he reasonable and logical inference of the evidence is that as the vehicle was parked and the policeman spotted, both Michael Evans and the Appellant attempted to hide the victim by holding her down in the vehicle. Both grabbed her and held her down in the back seat. Further, the evidence indicated that the Appellant may have exited the vehicle and approached the police vehicle and did nothing to stop the abduction and sexual assaults of the others."

We have carefully considered all the State's evidence and do not see that the jury could reasonably infer that Haight aided and abetted by trying to push the victim out of sight before the assaults by Wilson and Evans. The State asserted that a reasonable inference was that Haight and Evans held her down in the back seat. There was never any testimony that Evans and Haight were in the back seat together, and such an inference would be in contradiction to the complaining witness' testimony.

The testimony was that Haight was in back, and that Wilson, Evans and the complaining witness were in the front when they first parked. Evans and Wilson un-

dressed the woman in the front. Haight could still have been in the back seat and Evans could have gotten into the back seat with him, but the woman's testimony was that she remained in the front seat while Wilson raped her, that Haight was outside at this time and that Evans was in the back seat. She testified that Wilson then put her in the back seat with Evans and that Evans raped her, and that Haight was "still outside the car" when Evans finished raping her.

The State also seems to argue on appeal that this act of force by Haight to hide the woman and prevent her escape could have taken place when the people first drove up to the park. " * * * [A]s the vehicle was parked and the policeman spotted, both Michael Evans and the Appellant attempted to hide the victim by holding her down in the vehicle." That inference would also be contrary to the evidence. The complaining witness testified that she, Wilson and Evans were in the front seat when they first parked, and that Haight was in the back. Haight could have pushed the victim's head down while he sat in the back seat and she sat in the front. However, the complaining witness also testified that Haight pushed her head down between his legs, an act which was not physically possible unless Haight and the woman were both together in the back seat or in the front seat, since State's Exhibit No. 2 shows that the front seat is a bench seat with no console. State's Exhibit No. 4 does show that the front seat folds back in half to allow entry to the back seat, but that does not change the fact that there was no way appellant could push the woman's head between his legs while she was in the front seat and he was in the back. We find that, based on the evidence, the jury could not reasonably have inferred that Haight physically restrained the complaining witness before the assault.

 The evidence, however, was sufficient for the jury to infer that appellant knew what Wilson and Evans were doing, and acted as a lookout for them. The State must prove that the accessory had some knowledge of the principals' offenses. *Dressel v. People,* 178 Colo. 115, 495 P.2d 544 (1972). Knowledge that a crime is being committed, even when coupled with presence at the scene, is generally not enough to constitute aiding and abetting. To convict one of aiding and abetting the commission of a substantive offense, the prosecution must prove that the substantive offense was committed by someone and that the person charged as an aider and abettor associated himself and participated in the accomplishment and success of the criminal venture. *Nye & Nissen v. United States,* 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949); and *Goldsmith v. Cheney,* 447 F.2d 624 (10th Cir.1971). From the evidence presented by the State, the jury could have reasonably inferred that Haight turned the victim over to Wilson and Evans and that Haight acted as a lookout, and that he thereby associated himself and participated in the accomplishment and success of the criminal venture. *Jacobs v. State,* Wyo., 641 P.2d 197 (1982); and *Hawkes v. State,* Wyo., 626 P.2d 1041 (1981).

A summary of the complaining witness' testimony follows: Michael Wilson and Lonnie Evans abducted her from her home. Later in the day, the men picked appellant up at his home. All four of them were in the car when Evans drove to Lion's Park in Cheyenne. At this time, the complaining witness was in the front seat with Wilson and Evans. They both started taking off her clothes. Wilson then raped her. She testified that Haight was outside the car; she and Wilson were in the front seat; Evans was in the back. She also testified that when Haight got out of the car, "He just went out there, walking around." After Wilson raped her, he threw her into the back seat, where Evans raped her. The white man was still outside the car. Wilson then got into the back seat and raped her again. She testified that she made them stop by screaming, and that she was crying. After Wilson had raped her for the second time, he got back in the front seat and Haight got into the back seat. Haight grabbed her behind the neck, pushed her head to his lap, and tried to put his penis into her mouth.

Mrs. Sharon Mohler, an employee at the Mini-Mart where Evans and Haight dropped the complaining witness off after they left the park, testified that the woman came into the store at about fifteen or twenty minutes after ten o'clock. When asked to describe the woman's physical condition, she replied, "She was completely white; her face looked like she had been crying. There were red splotches on it. She was bent over; she would hold her stomach. She was really shakey." Mrs. Mohler also testified that the woman was hysterical, and started crying when she was told she could not use the restroom. The woman was holding her stomach and leaning over the counter "like she was going to be sick." The woman stayed at the store until the police, whom Mrs. Mohler had phoned, arrived.

"Q: All right. Did anything else happen during that time she was there?

"A: She kept pointing outside saying they were out there and she needed me to hide her. And I asked the police on the phone, whoever it was, what he wanted me to do about hiding her, and he just said for my husband to stand where he was, make sure that nobody else came into the store to bother her."

The police officer who came to the store also testified that the woman was crying, that she appeared to have an injured right shoulder, that she was clutching her abdomen and that she had a red mark across the bridge of her nose. The emergency room physician testified that the woman was brought in between eleven and twelve o'clock, that she was anxious, upset, and had been crying earlier. He also testified that she had a small laceration on her shoulder and a contusion on her neck. She complained of pain and abdominal tenderness. The nurse's testimony was essentially the same.

Looking at the State's evidence in the light most favorable to it, the evidence establishes that Wilson and Evans raped the complaining witness. The evidence also establishes that the woman was screaming while Wilson and Evans were raping her, and that Haight was out walking around while these rapes took place. A reasonable inference from the testimony of the complaining witness is that Haight was close enough so that she could see him walking around, and that he was therefore close enough to hear her screams and know that she was being raped. From the testimony of all the people who saw her after Evans and Haight left her at the Mini-Mart, the jury could easily infer that the woman was visibly upset and in pain, and that she had not consented to the sexual acts. The jury could also reasonably infer that appellant was aware of these facts. The evidence shows that Haight attempted to rape the woman after the others had finished with her. The jury could reasonably infer that while Haight was outside waiting for his turn to sexually assault the woman, he was standing guard. A reasonable inference here, then, is that Haight would have warned Wilson and Evans had they been in danger of discovery.

One who knowingly stands guard is an aider and abettor. *State v. Weekley,* 40 Wyo. 162, 275 P. 122, 126 (1928). In *Weekley,* the appellant was charged with aiding and abetting the unlawful possession of liquor. Weekley stood at the entrance to a cafe and searched persons before they entered. A police officer entered the cafe over Weekley's objections. There was testimony that Weekley pressed a button in the door casing and that the officer heard a buzzer ring behind the bar. Another officer testified that he heard a buzzer ring. We said in that case:

"It seems to be well settled that keeping watch while a crime is being perpetrated so as to facilitate the escape of a party actually committing it or to prevent his being interrupted is an aiding and abetting which constitutes him a principal * * *." *State v. Weekley,* supra, 40 Wyo. at 171, 275 P.2d at 126.

The court went on to rule that there was evidence from which the jury could infer that Weekley was stationed at the door of the cafe to warn, and that he did warn, the other defendant.

■ A previous understanding does not need to be shown to render an aider and abettor accountable for the principal's acts. *Espy v. State,* 54 Wyo. 291, 92 P.2d 549 (1939). There was clearly a concert of action here, a criminal venture which involved three perpetrators and several crimes. *Commonwealth v. Stukes,* 435 Pa. 535, 257 A.2d 828 (1969).

"* * * Aiding and abetting presupposes active participation in the offense or advice or encouragement in the commission and a corresponding intent to facilitate the perpetration. [Citation.]

\* \* \* \* \* \*

"* * * Although a defendant's presence at the time and place of the crime does not establish guilt as an aider, abettor or principal, [citations] an intent to engage in the criminal venture may be shown by the relationship of the parties and their conduct before and after the offense. [Citations.]" *State v. Tison,* 129 Ariz. 546, 633 P.2d 355, 362–363 (1981).

The evidence was sufficient to infer that appellant was a part and parcel of the entire criminal venture.

### III

Appellant's third contention is that the evidence was insufficient to support a conviction of attempted sexual assault. Appellant argues that the evidence shows that he voluntarily and completely abandoned any attempt to commit a sexual crime, and that voluntary abandonment or renunciation is a defense to an attempted crime. Count III

2. We note that appellant was informed against and convicted under §§ 6–1–201, W.S.1977, Cum.Supp.1981, and 6–4–302(a)(i), W.S.1977. Section 6–1–204, W.S.1977, Cum.Supp.1981, provides that the penalty for attempt is the same as the penalty for the most serious offense which is attempted. Section 6–4–306(a)(i), W.S.1977, provides that a person convicted of sexual assault in the first degree who is not being given an enhanced sentence shall be punished by imprisonment for not less than five nor more than 50 years. The sentence which appellant received was for not less than two nor more than four years. The State has not taken exception to the term of the sentence.

of the information charged appellant under § 6–1–201, W.S.1977, Cum.Supp.1981, and under § 6–4–302(a)(i), W.S.1977. Section 6–1–201, provides in pertinent part:

"(a) A person is guilty of an attempt to commit a crime if:

"(i) With the intention of committing the crime, he does any act which is a substantial step towards commission of the crime. A 'substantial step' is conduct which is strongly corroborative of the firmness of the actor's intention to complete the commission of the crime; * * *

\* \* \* \* \* \*

"(b) A person is not liable under this section if, under circumstances manifesting a voluntary and complete renunciation of his criminal intention, he avoided the commission of the crime attempted by abandoning his criminal effort."

Section 6–4–302(a)(i) provides:

"(a) Any actor who inflicts sexual penetration or sexual intrusion on a victim commits a sexual assault in the first degree if:

"(i) The actor causes submission of the victim through the actual application, 'reasonably calculated to cause submission of the victim, of physical force or forcible confinement; * * * "[2]

■ There is no doubt that the jury could find that appellant took a substantial step toward commission of a first degree sexual assault and that he intended to commit first degree sexual assault. The appellant entered the back seat of the automo-

We also note that the statutes specifically set out attempted sexual assault in § 6–4–314, W.S.1977: "Whoever perpetrates an assault or assault and battery upon anyone with intent to commit a sexual assault in the first or second degree, shall, upon conviction, be imprisoned in the penitentiary not less than one (1) year nor more than five (5) years." The legislature seems to have allowed for two different sentences for commission of the same act, an attempted sexual assault in the first degree, and two different sentences for an attempted sexual assault in the second degree.

bile where the complaining witness was undressed and had been screaming and crying. The appellant grabbed the back of the woman's neck and pushed her head into his lap, thereby applying physical force reasonably calculated to cause submission. The jury also could have easily inferred that the appellant was attempting sexual penetration when he put his penis to the woman's mouth. Each of those acts was conduct which was strongly corroborative of the actor's intention to complete a first degree sexual assault.

The question here comes, however, because of subsection (b) of § 6–1–201, supra. The State argues that the crime of attempt was complete before appellant's alleged abandonment, and that appellant could not legally abandon the commission of the crime. It argues that the abandonment must come before the act is put in the process of final execution. That was indeed the traditional view.

> "The traditional view as expressed by most commentators is that abandonment is never a defense to a charge of attempt if the defendant has gone so far as to engage in the requisite acts with criminal intent. * * *" Criminal Law, LaFave and Scott, p. 449 (1972).

That, however, is not how subsection (b) of § 6–1–201 is worded. It specifically provides that a person is not liable under the attempt statute if he voluntarily and completely renounces his criminal intention and avoids the commission *"of the crime attempted"* by abandoning his criminal attempt. (Emphasis added.) Here, appellant was attempting the crime of first degree sexual assault, which crime he did not commit because he did not inflict a sexual penetration.

Appellant argues that the evidence shows that testimony strongly supports the inference of a voluntary and complete abandonment. The complaining witness' testimony concerning the attempted assault was:

> "Q. All right. Now, when Willie got finished, where was the white man?
>
> "A. He got back in. He got back in front seat.

> "Q. Who did?
>
> "A. Willie got back in front seat again, and then the white one came in.
>
> "Q. Did he get in the back seat?
>
> "A. Yes.
>
> "Q. All right. What did he do to you there?
>
> "A. He grabbed me back on my neck.
>
> "Q. And what did he do when he grabbed you behind the neck?
>
> "A. Started feeling with my lips, started feeling his penis up here.
>
> "Q. Did he push your head to his lap?
>
> "A. Yes.
>
> "Q. You said you could feel his penis with your lips?
>
> "A. Uh-huh.
>
> "Q. All right. Did he try to put his penis in your mouth?
>
> "A. Yes, he tried.
>
> "Q. Did you let him?
>
> "A. Nope.
>
> "Q. What happened?
>
> "A. He quit.
>
> "Q. Why did he quit?
>
> "A. I don't know. He said she don't want to do it. That is what he said."

The appellant argues that the evidence showed that the only reason he did not execute the crime was an internal lack of resolve or a voluntary abandonment. He refers to the Model Penal Code.

Section 5.01(4) of the Model Penal Code (10 Uniform Laws Annotated, 1974) provides:

> "(4) Renunciation of Criminal Purpose. When the actor's conduct would otherwise constitute an attempt * * * it is an affirmative defense that he abandoned his criminal effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose. * * *"

Section 6–1–201 is similar, although not identical, to § 5.01(4) of the Model Penal Code, and to statutes recently enacted by several other states. The statutes are not analytically sound, but legislatures appar-

ently feel that the illogical result is justified because it encourages people to forego criminal activity. As explained in the committee notes to Chapter 26–10 (Ga.Code Ann.1972) of the Georgia Criminal Code:

" * * * The philosophy of the proposed section is that the person who really repents at that point and abandons the enterprise should not be punished. It should be emphasized that this defense is not available to one whose criminal activity ceases only because of difficulty, or a decision to wait for a later or safer opportunity."

Section 5.01(4) of the Model Penal Code also provides:

"Within the meaning of this Article, renunciation of criminal purpose is not voluntary, if it is motivated, in whole or in part, by circumstances, not present or apparent at the inception of the actor's course of conduct, which increase the probability of detection or apprehension or which make more difficult the accomplishment of the criminal purpose. * * "

Our statutes on inchoate offenses give no such guidance, but statutes from other states have addressed the issue. Section 26–1003(a) (Ga.Code Ann.1972) provides that a renunciation of criminal purpose is not voluntary if it results from

"(a) A belief that circumstances exist * * * which render more difficult the accomplishment of the criminal purpose. * .* * "

Chapter 11, § 541 (Del.Code Ann.1974) uses identical language to describe when an abandonment is not voluntary, as does § 13–1005(c)(1) of the Arizona Statutes (ARS 1956, 1978). Colorado provides:

"Renunciation and abandonment are not voluntary and complete so as to be a defense to prosecution under this article if they are motivated in whole or in part by:

"(a) A belief that a circumstance exists which increases the probability of detection or apprehension of the defendant or another or which makes more difficult the consummation of the crime; or

"(b) A decision to postpone the crime until another time or to substitute another victim or another but similar objective." Section 18–2–401 (CRS 1973, 1978 Replacement).

We believe, considering the rationale for allowing a complete and voluntary renunciation and abandonment, that the Colorado statute best describes the situation when renunciation and abandonment are not voluntary and complete, and we adopt the definition set out above. If a defendant's abandonment is motivated at least in part by a belief that a circumstance exists which will make more difficult the consummation of the crime, then he has not had a change of mind and heart, but is merely acting partially on the belief that the crime is going to be more difficult to commit.

That is what happened here. We have already said that the inference was reasonable that appellant intended to commit a first degree assault after Wilson and Evans were finished. The appellant argues that the testimony shows that he stopped because the woman did not want to engage in a sexual act. The evidence shows, however, that appellant already knew the woman was not consenting. The testimony therefore supports an inference that appellant in part desisted because the victim refused to open her mouth, thereby making the commission of the crime more difficult. The jury could therefore infer that there were no "circumstances manifesting a voluntary and complete renunciation of his criminal intention." We do not think a voluntary and complete renunciation can ever rest on the fact that a criminal desists from his attempt partially because his intended victim is resisting more than he might have anticipated.

Affirmed.