Michael Jesus **RODRIGUEZ**,
Appellant (Defendant),

v.

The **STATE of Wyoming**,
Appellee (Plaintiff).

No. 85–35.

Supreme Court of Wyoming.

Dec. 30, 1985.

Leonard D. Munker, State Public Defender, Cheyenne, Martin J. McClain, Appellate Counsel, Gerald M. Gallivan, Director, Defender Aid Program, Laramie, and James A. Horner, Jr., Student Director, Defender Aid Program (argued), for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Lawrence J. Wolfe, Sr. Asst. Atty. Gen. (argued), for appellee.

Before THOMAS, C.J., and ROSE,* ROONEY,** BROWN, and CARDINE, JJ.

CARDINE, Justice.

Appellant Michael Rodriguez, after trial to a jury, was convicted of aggravated burglary and aggravated robbery. The principal issues presented for our determination are closely related. We must decide whether the trial court erred in admitting into evidence testimony given by the robbery victim at a preliminary hearing, whether admission of that testimony violated the appellant's rights under the confrontation clauses of the United States and Wyoming Constitutions, and whether the evidence was sufficient to sustain the conviction.[1]

We affirm the judgment of the district court and hold that the testimony at issue was properly admitted under the former-testimony exception to the hearsay rule, Rule 804(b)(1), W.R.E., that the admission of the testimony did not violate the confrontation clauses of either the United States or Wyoming Constitutions, and that the evidence was sufficient to sustain the convictions.

## FACTS

Late in the evening of September 18, 1983, a man broke into the home of 79-year-old Bernice McIntosh, tied her to a chair, and robbed her at knifepoint. After the man fled, Bernice McIntosh managed to free herself and called the police. Upon their arrival, she identified her assailant as the appellant, Michael Rodriguez, who had done yard work for her in the past. Mrs. McIntosh informed the officers that she had recognized appellant by his voice and appearance and that he had taken approximately $182 from her. The police went to appellant's residence and arrested him. In a search of the premises, they found $91 in a desk drawer and $91 in a wallet.

The next morning, Mrs. McIntosh was interviewed at the police station. She was shown a photo lineup containing sixteen photographs from which she identified appellant as her assailant. On October 7, 1983, Mrs. McIntosh testified at appellant's preliminary hearing. On direct examination Mrs. McIntosh again identified appellant as the man who had broken into her home, assaulted, and robbed her. During extensive cross-examination, appellant's attorney inquired into Mrs. McIntosh's ability to identify the appellant. She was asked details of her acquaintance with appellant, how many times she had seen him before the robbery, whether he looked the same to her, and whether she had a problem identifying him during the robbery. Inquiry was made into her physical health and eyesight. Mrs. McIntosh gave detailed answers to these inquiries and stated she had no difficulty identifying appellant as the perpetrator of the crime charged.

Five days before appellant's trial began, Mrs. McIntosh died of causes unrelated to the robbery. At trial, the transcript of Mrs. McIntosh's testimony at the preliminary hearing was introduced and read to the jury. In addition, the prosecution introduced, through police testimony, statements made by Mrs. McIntosh on the night of the robbery in which she identified the appellant as her assailant. Finally, evidence of Mrs. McIntosh's identification of the appellant during the photo lineup was introduced through the testimony of a police officer. The jury found the appellant guilty of one count of aggravated robbery and one count of aggravated burglary, and he was sentenced to concurrent terms of

---

* Retired November 1, 1985.

** Retired November 30, 1985.

1. In his statement of the issues the appellant does not mention Rule 804(b)(1), W.R.E. Instead, he splits the confrontation clause issues and treats one under the United States Constitution and the other under the Wyoming Constitution. His arguments under the Wyoming Constitution seem to be aimed more at Rule 804(b)(1) than at any special Wyoming confrontation clause test. In fact, the Wyoming and federal confrontation clauses can be joined for analysis under a single test. We, therefore, have adopted the state's delineation of the issues by treating the confrontation clause and Rule 804(b)(1) as separate issues.

ten to fifteen years in the Wyoming State Penitentiary.

## THE FORMER-TESTIMONY EXCEPTION TO THE HEARSAY RULE

Appellant contends that Mrs. McIntosh's testimony at the preliminary hearing was not properly admissible at trial under Rule 804(b)(1), W.R.E. The only Wyoming precedent involving the admission at trial of testimony taken at preliminary hearings is found in cases decided by this court before the adoption of the Wyoming Rules of Evidence in 1978. In *Simms v. State,* Wyo., 492 P.2d 516, 521 (1972), for example, we held that a witness' preliminary hearing testimony is admissible at trial if the witness is unavailable to testify. In its brief, the State argues that *Simms* is still sound law independent of the rules of evidence. While the *Simms* rationale may be useful, and the *Simms* case might be decided the same way today, we cannot apply the *Simms* holding without first analyzing its validity under Rule 804(b)(1), W.R.E., the former-testimony exception to the hearsay rule.

Under Rule 804(b)(1), W.R.E., former testimony may be introduced if three elements are present. First, the declarant must be unavailable at trial. In the present case, there is no dispute as to Mrs. McIntosh's unavailability. Second, the former testimony sought to be admitted must have been given by the witness while testifying in another hearing or deposition. Again, the parties agree that the second element was satisfied because Mrs. McIntosh gave the disputed testimony at a preliminary hearing. Third, the party against whom the statement is offered must have had "an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination" at the prior hearing. Rule 804(b)(1), W.R.E. It is this last element that serves as the focal point of the dispute in this case.

Appellant argues that he did not have the same motive and opportunity to cross-examine Mrs. McIntosh at the preliminary hearing. We note at the outset that there is no bona fide issue regarding appellant's *opportunity* to cross-examine Mrs. McIntosh at the preliminary hearing. The hearing transcript contains twenty pages of testimony obtained from Mrs. McIntosh during cross-examination. It includes detailed questioning by appellant about the witness' health, eyesight, and ability to recognize her assailant. The court did not in any way limit appellant's cross-examination of Mrs. McIntosh on the issue of identification. Clearly, appellant had a full opportunity to cross-examine.

The key question, then, is whether appellant's motive to cross-examine Mrs. McIntosh at the preliminary hearing was similar to the motive he would have had to cross-examine her at trial. The courts of other states have approached the question in three ways. They have held that defense attorneys never have similar motives to cross-examine at both preliminary hearings and trials; that defense attorneys always have similar motives to cross-examine at preliminary hearings and trials; and that defense attorneys' motives at preliminary hearings and trials must be compared on a case-by-case basis.

The Colorado Supreme Court has held that a defense attorney never has a motive to cross-examine a witness at a preliminary hearing which is similar to his motive to cross-examine that witness at trial. In *People v. Smith,* 198 Colo. 120, 597 P.2d 204, 207 (1979), the Colorado court stated that a preliminary hearing has the limited purpose of establishing probable cause. In most cases, even the most searching cross-examination will not prevent a finding of probable cause which is a considerably lesser burden of proof than the reasonable-doubt standard required at trial. Therefore, according to the Colorado court, defense attorneys will rarely, if ever, waste their time with effective cross-examination at the preliminary hearing. They will wait until trial where they will be highly motivated to attack the credibility of the witness in front of the jury.

The Colorado court's position is rejected by a majority of states. 4 Louisell and Mueller, Federal Evidence § 487, p. 1092 (1980). Most courts that have decided the issue have refused to adopt a per se rule against admission of preliminary hearing testimony at trial. In fact, several courts have held that preliminary hearing testimony is always admissible at trial if the declarant is unavailable. They reason that a defense attorney's "motive and interest are the same" in both the preliminary hearing and trial settings. Defense counsel "acts in both situations in the interest of and [is] motivated by establishing the innocence of the client." *State v. Brooks*, Utah, 638 P.2d 537, 541 (1981). See also, *State v. Martinez*, 102 N.M. 94, 691 P.2d 887, 889 (1984).

Unlike the Colorado, New Mexico, and Utah courts, the Supreme Court of Arkansas has refused to adopt a per se rule of either admission or exclusion of former testimony from a preliminary hearing. That court has held that the "similar motive" requirement of the former-testimony exception should be analyzed on a case-by-case basis. *Scott v. State*, 272 Ark. 88, 612 S.W.2d 110, 113 (1981). In *Scott*, the Arkansas court held that preliminary hearing testimony should not have been admitted at trial under the facts of that case, but, in the proper case, preliminary hearing testimony would be admissible.

■ We adopt the case-by-case approach taken by the Arkansas court. There will undoubtedly be cases in which preliminary hearing testimony should not be admitted at trial because the defense attorney did not have a similar motive to cross-examine the witness at the preliminary hearing but has a compelling motive to undertake that cross-examination at trial. There will also be cases, like the case at bar, in which the defense attorney has a motive at the preliminary hearing to cross-examine the witness which is similar to his motive to cross-examine at trial. The motive may exist whether or not cross-examination actually occurs. The per se rules adopted by Colorado on the one hand, and Utah and New Mexico on the other, do not account for the varying factual situations, strategies, and approaches to the case.

■ In this case, it is clear that appellant's motive to develop Mrs. McIntosh's testimony at the preliminary hearing was similar to his motive to develop her testimony at trial. One of his motives for cross-examination at the preliminary hearing was to show that there was no probable cause to believe that the appellant was the robber. If he could show that Mrs. McIntosh's identification testimony was so weak that there was no probable cause that "an offense has been committed *and that the defendant committed it*," (emphasis added) Rule 7(b), W.R.Cr.P., the appellant would have been released.

Here, appellant's attorney undertook extensive cross-examination of Mrs. McIntosh at the preliminary hearing. That cross-examination is evidence that the attorney was motivated to attack Mrs. McIntosh's identification of his client as the robber. She was closely interrogated concerning her health, eyesight, nature and extent of her acquaintance with appellant, her observations of him, and the firmness of her identification.

Appellant's motive to cross-examine Mrs. McIntosh at trial, had she been available, would have been similar. He would have tried to show that Mrs. McIntosh could not identify the appellant as the robber so that the jury could not attribute the crime to the appellant beyond a reasonable doubt. In his brief, appellant admits that this important area of inquiry would have been pursued at trial.

The motive was the same, an opportunity was afforded, and fairly extensive cross-examination upon the issue of identification was pursued by appellant at the preliminary hearing. We hold that under these circumstances the preliminary hearing testimony was properly admitted under Rule 804(b)(1), W.R.E.

### THE CONFRONTATION CLAUSE

Appellant contends that the admission at trial of the transcript of Mrs. McIntosh's

preliminary hearing testimony violated his right to confront the witness against him. Appellant relies on two confrontation-clause tests, one under the Wyoming Constitution and the other under the United States Constitution. Initially we note that his proposed test under the Wyoming Constitution is nothing more than the test we have just discussed under Rule 804(b)(1) of the Wyoming Rules of Evidence. It is not the proper standard for analysis of Wyoming's confrontation clause.

■ Former testimony is admissible under the confrontation clauses of both the constitutions of the United States and Wyoming if the witness who gave the former testimony is unavailable to testify at trial and if the prior testimony bore an "indicia of reliability" sufficient to " 'afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement.' " *Ohio v. Roberts,* 448 U.S. 56, 66–67, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980); *Mancusi v. Stubbs,* 408 U.S. 204, 214, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972); *Grable v. State,* Wyo., 649 P.2d 663, 673 (1982); *Martinez v. State,* Wyo., 611 P.2d 831, 837 (1980).

■ In the present case, there is no issue concerning unavailability. The only real question is whether Mrs. McIntosh's preliminary hearing testimony bore adequate indicia of reliability. In *Mancusi v. Stubbs,* supra, the test adopted by the United States Supreme Court identified four factors which, when present, provide adequate indicia of reliability. In *Martinez v. State,* supra, we adopted the same test. Prior testimony bears an adequate indicia of reliability when the prior testimony was given under oath, when it was given while the defendant was represented by counsel, when the defendant's counsel could and did cross-examine the witness, and when cross-examination which would be conducted at trial would not touch upon any new and significantly material line of inquiry. *Martinez v. State,* supra at 837.

■ Of the four elements listed in *Martinez v. State,* supra, only the fourth is contested by the parties. Appellant argues that if Mrs. McIntosh had been available for trial, his attorney would have touched upon a new line of material inquiry. He claims that this new inquiry would have consisted of impeachment of Mrs. McIntosh's identification of the appellant through the use of statements she made to the police. We fail to see how this line of questioning could be called a new line of inquiry. Mrs. McIntosh's identification of the appellant was the very line of inquiry pursued by appellant's defense counsel at the preliminary hearing. He inquired concerning her eyesight and the firmness of her identification, and he elicited a long statement from her in which she recounted her familiarity with the appellant. Further questioning which might have taken place at trial about her identification of the appellant, even if it involved her statements to a police officer, would only have represented a continuation of a single line of questioning.

It is worth noting, also, that the appellant could have brought out inconsistencies in Mrs. McIntosh's various identifications despite her absence at trial. The prosecution presented her other identifying statements to the jury through the testimony of the police. Those policemen were available for cross-examination. If her statements had been inconsistent, the jury would have learned of those inconsistencies.

All of the four factors which we outlined in *Martinez v. State,* supra, were satisfied by the prior testimony admitted into evidence in this case. Therefore, that testimony bore sufficient indicia of reliability to escape the prohibitions of the confrontation clauses of both the United States and Wyoming constitutions.

## SUFFICIENCY OF THE EVIDENCE TO CONVICT

■ The appellant has raised one final issue. He argues that the evidence in this case was insufficient to convict. When insufficiency of the evidence is argued, we examine and accept as true the evidence favorable to the prosecution, leaving out of

consideration entirely the evidence favorable to the defendant in conflict therewith, and give the evidence of the prosecution every favorable inference which may be reasonably and fairly drawn therefrom. *Grable v. State*, supra, 649 P.2d at 675. Given the extensive identification evidence and the evidence of the appellant's possession of robbery proceeds, the insufficiency claim is without merit.

The judgment of the district court is affirmed.

THOMAS, C.J., filed a specially concurring opinion.

THOMAS, Chief Justice, specially concurring.

I concur with the result in this case. I would not pursue the ad hoc approach of the Arkansas court, however. I would endeavor to provide at least a degree of certainty for practitioners in such cases.

In this case we conclude that testimony from the preliminary hearing was admissible at trial. That is the same problem the Arkansas court was solving in *Scott v. State*, 272 Ark. 88, 612 S.W.2d 110 (1981). I would not go to the extent of adopting an absolute per se rule for admissibility of the testimony at the preliminary examination. I would adopt a rule to the effect that testimony from the preliminary examination is admissible at trial assuming the conditions of Rule 804(b)(1), Wyoming Rules of Evidence, are met. The defendant would have an opportunity to show good cause to the court that the prior testimony should not be admitted because of a manifest injustice arising out of the circumstances. The greater certainty would be helpful to counsel who would know that if they perceive any advantage to the client at cross-examination, they should pursue it at the preliminary examination. They would understand that the prior testimony would be admissible at trial, and the burden would be upon the defendant to explain why it should not be admitted. In most cases the result would be no different from the result of the majority opinion in this case except that counsel would know that

they could not forego cross-examination with the expectation of relying upon the lack of cross-examination to defeat the admissibility of the prior testimony at trial.

I have a second concern in this case which relates to our historic articulation of the standard by which we examine evidence in a criminal case in which the issue of sufficiency of the evidence is raised. In *Broom v. State*, Wyo., 695 P.2d 640, 642 (1985), we recognized the concept set forth in *Jackson v. Virginia*, 443 U.S. 307, 318–319, 99 S.Ct. 2781, 2788–2789, 61 L.Ed.2d 560 (1979), to the effect that the question is not whether we are persuaded of guilt beyond a reasonable doubt but whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In my judgment we then overlook a subtle nuance in the language quoted from *Jackson v. Virginia,* supra. The Supreme Court of the United States went on to say at 443 U.S. 319, 99 S.Ct. 2789:

"* * * Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. * * *" (Emphasis in original.)

Concededly, the Supreme Court of the United States was discussing the view taken of the evidence by a United States district court in a proceeding brought under 28 U.S.C. § 2254, the provision for post-conviction review of state cases in the federal context. Historically, such reviews have not been numerous from the courts of the state of Wyoming. That may not hold true in the future, however, and for that reason it would be helpful to articulate our standard of review by stating that we review *all the evidence* in the light most favorable to the prosecution. As a practical matter we would do exactly what we do now, but the federal court would not have to treat with an issue as to whether because of the different statement of the rule this court had in some way conducted

a more limited examination of the evidence than that contemplated by *Jackson v. Virginia,* supra.