Thomas J. CARDENAS,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 89–274.

Supreme Court of Wyoming.

May 23, 1991.

Rehearing Denied June 17, 1991.

Leonard Munker, State Public Defender and Gerald M. Gallivan, Wyoming Defender Aid Program, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, and Dennis C. Cook, Sr. Asst. Attys. Gen., for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

## OPINION

MACY, Justice.

Appellant Thomas Cardenas appeals from his convictions for attempted first-degree sexual assault and aggravated assault and battery.

We affirm.

Appellant raises the following issues:

I.  Whether due process, confrontation of witnesses, underlying values of the hearsay rule and fundamental fairness are violated by the admission at trial of prior testimony of the victim given at a preliminary hearing where:

1) Prior case law has restricted the motive and opportunity for cross[-]examination at a preliminary hearing.

2) Applicable law has limited the time and the opportunity for investigation and discovery before the preliminary hearing.

3) There was no indication that the witness would be unavailable for trial removing any incentive for a th[o]rough cross-examination.

4) Counsel for defendant at trial was not counsel at the preliminary.

5) The defendant is effectively prevented from testifying by the admissibility of a prior conviction?

II.  Did the trial court err in failing to grant a continuance upon motion of defense counsel where:

1) Jury trial was set for Monday and counsel was advised the previous Wednesday that the victim had died and was not available to testify or for cross-examination;

2) The defense counsel immediately (on Thursday) filed for such a continuance, and the trial court set the matter for hearing on Friday afternoon and summarily denied said continuance; and

3) The defendant was denied effective assistance of counsel, because of a lack of a reasonable time to prepare for the defense of a very serious case?

III.  Did the court below err in not granting a directed verdict on the issue of abandonment and in instructing the jury on that defense?

IV.  Is the defendant's conviction for aggravated assault reversible under a plain error analysis where the evidence is conflicting and the jury was not properly instructed on the elements of the crime?

On the evening of April 12, 1989, the victim and Dorothy Tripp arrived at the victim's apartment to find Appellant in her kitchen. Appellant lived across the hall in another apartment, and he and the victim had been friends for several months. The victim and Appellant began to argue vehemently, and the victim asked Appellant to leave her apartment. After Appellant refused to leave, the victim attempted to call the police. Appellant retrieved a knife from the kitchen and tried to cut the telephone cord. The victim dropped the telephone, and Appellant grabbed her and placed the knife on her throat. At that point, Tripp ran out of the apartment and called the police. The police arrived at the victim's apartment and knocked on the door. When they did not get a response, they went into the apartment, which appeared to be the scene of a struggle, and found the victim and Appellant in the bathroom. The victim was sitting on the floor in her underwear. Appellant was strad-

dling the victim's legs, and his pants were unfastened and partially pulled down.

At Appellant's preliminary hearing, the victim testified, *inter alia*, about the following events which occurred after Tripp left the apartment. Appellant continued to hold the knife to the victim's throat and told her that he was going to kill her. Next, he locked the back door to the apartment, and he threw the victim against the wall. The two struggled for several minutes as Appellant pulled the victim around the apartment by her hair and struck her with his fists. Appellant demanded that the victim take off her clothes, and he hit her and threatened to kill her when she refused. Finally, the victim disrobed, except for her underwear, and Appellant began to pull her into a bedroom. The victim broke free and locked herself in the bathroom. Appellant kicked in the bathroom door and pulled down his pants and underwear. The victim stated that Appellant grabbed her head, pushed it towards his penis, and said, "[D]o it or else." After the victim resisted, Appellant pulled up his pants, hugged the victim, and apologized to her. At that point, the door burst open, and the police apprehended Appellant.

The police arrested Appellant and charged him with attempted first-degree sexual assault in violation of Wyo.Stat. §§ 6-1-301 and 6-2-302 (1988), aggravated assault and battery in violation of Wyo. Stat. § 6-2-502 (1988)[1] and interference with a police officer in violation of Wyo. Stat. § 6-5-204 (1988).[2] Appellant pleaded not guilty to all four charges. On July 6, 1989, the district court granted Appellant's counsel's motion to withdraw. Appellant's new counsel entered appearances on July

13, 1989, and the court set the trial for August 7, 1989.

On July 28, 1989, the victim died from injuries which she suffered in an automobile accident. Appellant subsequently filed a motion to bar the use at trial of the victim's preliminary hearing testimony and a motion for a continuance. After the district court held a motion hearing, it denied both of Appellant's motions.

A jury convicted Appellant for committing attempted first-degree sexual assault, aggravated assault and battery, and interference with a police officer. The district court sentenced him to confinement in the Wyoming State Penitentiary for a minimum of forty-five years and a maximum of fifty years for attempted first-degree sexual assault, a minimum of eight years and a maximum of ten years for aggravated assault and battery, and a minimum of five years and a maximum of six years for interference with a police officer. The court ordered the sentences for attempted first-degree sexual assault and aggravated assault and battery to run concurrently and the sentence for interference with a police officer to run consecutively to the other two sentences.

### Admissibility of the Preliminary Hearing Testimony

Appellant's first issue challenges the admissibility of the victim's preliminary hearing testimony. W.R.E. 804(b)(1) provides:

*Hearsay exceptions.*—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former Testimony.—Testimony given as a witness at another hearing

---

1. Section 6-2-502 states:
   (a) A person is guilty of aggravated assault and battery if he:
   (i) Causes serious bodily injury to another intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;
   (ii) Attempts to cause, or intentionally or knowingly causes bodily injury to another with a deadly weapon;
   (iii) Threatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another; or

   (iv) Intentionally, knowingly or recklessly causes bodily injury to a woman whom he knows is pregnant.
   (b) Aggravated assault and battery is a felony punishable by imprisonment for not more than ten (10) years.

2. The criminal complaint also charged Appellant with kidnapping. The district court refused to submit the kidnapping charge for the jury's consideration, and Appellant has not appealed from his conviction for interference with a police officer.

of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, *had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination* [.]

(Emphasis added.) Three requirements must be satisfied pursuant to W.R.E. 804(b)(1) before a court can allow the admission of former testimony:

First, the declarant must be unavailable at trial. * * * Second, the former testimony sought to be admitted must have been given by the witness while testifying in another hearing or deposition. * * * Third, the party against whom the statement is offered must have had "an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination" at the prior hearing.

*Rodriguez v. State*, 711 P.2d 410, 413 (Wyo.1985) (quoting W.R.E. 804(b)(1)). Appellant contends that he did not have an opportunity and similar motive to develop the victim's cross-examination at the preliminary hearing.

In *Rodriguez*, this Court held that the admissibility of preliminary hearing testimony at trial would depend upon a case-by-case analysis. In that case, the defendant was accused of breaking into the home of a seventy-nine-year-old woman, tying her to a chair, and robbing her at knife point. When the police took her statement and when the police showed her a photo array, the victim identified the defendant as the man who robbed her. The victim again identified the defendant at the preliminary hearing as being the man who had robbed her. Her preliminary hearing testimony was challenged in a fairly extensive cross-examination. The victim died five days before the trial, at which her preliminary hearing testimony was read to the jury. *Id.* at 412. We held that the district court did not err under W.R.E. 804(b)(1) by allowing the admission of the preliminary hearing testimony because the defendant had an opportunity to cross-examine the victim,

because the motive of discrediting the victim's identification was the same in both the preliminary hearing and the trial, and because the defendant subjected the victim to a fairly extensive cross-examination on the issue of her identification. *Id.* at 414.

■ In this case, Appellant had the opportunity to cross-examine the victim. After a direct examination by the prosecuting attorney, Appellant's counsel asked the victim about her relationship with Appellant, about the events leading up to the alleged assaults, about the amount of alcohol she drank before the alleged assaults, about the possibility that she had sold drugs, and about the kind of clothes she wore when she was around Appellant. The district court did not limit the cross-examination.

■ Next, we must determine if Appellant's motive to cross-examine the victim at the preliminary hearing was similar to his motive to cross-examine her at the trial. Appellant's cross-examination of the victim at the preliminary hearing indicates that he was attempting to analyze and discount her version of the alleged assaults and her credibility in general. From his appellate brief, we discern that Appellant's primary motive to cross-examine the victim at trial was to test her credibility in front of the jury. Despite the apparent similarity, Appellant contends that his motives were different because the purpose of a preliminary hearing (the determination of probable cause) is different than the purpose of a trial (the determination of guilt). He asserts that, during the preliminary hearing, his counsel was not motivated to go beyond attempting to rebut a finding of probable cause since a more extensive cross-examination would have forced him to reveal his theory of defense. That argument demonstrates that Appellant's cross-examination of the victim at the preliminary hearing may have been limited by a tactical decision, but it does not indicate that his motive to cross-examine the victim at the preliminary hearing was not similar to his motive to cross-examine her at trial. As in *Rodriguez*, where the defendant's motive in both proceedings was to discredit the witness'

testimony, Appellant's motives were sufficiently similar to warrant the admissibility of the victim's preliminary hearing testimony under W.R.E. 804(b)(1).

In *Rodriguez* and in *King v. State*, 780 P.2d 943 (Wyo.1989), we also discussed whether the district court's admission of preliminary hearing testimony violated the confrontation clauses of the United States Constitution and the Wyoming Constitution. We said:

> Former testimony is admissible under the confrontation clauses of both the constitutions of the United States and Wyoming if the witness who gave the former testimony is unavailable to testify at trial and if the prior testimony bore an "indicia of reliability" sufficient to "'afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement.'" *Ohio v. Roberts*, 448 U.S. 56, 66–67, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980); *Mancusi v. Stubbs*, 408 U.S. 204, 214, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972); *Grable v. State*, Wyo., 649 P.2d 663, 673 (1982); *Martinez v. State*, Wyo., 611 P.2d 831, 837 (Wyo.1980).

*Rodriguez*, 711 P.2d at 415. We also articulated the test adopted in *Martinez v. State*, 611 P.2d 831 (Wyo.1980), which we use to determine if former testimony is reliable:

> Prior testimony bears an adequate indicia of reliability when the prior testimony was given under oath, when it was given while the defendant was represented by counsel, when the defendant's counsel should and did cross-examine the witness, and when cross-examination which would be conducted at trial would not touch upon any new and significantly material line of inquiry.

*Rodriguez*, 711 P.2d at 415. We held that the district court's allowance of the admission of the victim's preliminary hearing testimony did not violate the defendant's right to confront witnesses against him because the four parts of the reliability test were satisfied.

■ We continue to follow the analysis we delineated in *Rodriguez*, and we hold that the district court did not err by allowing the jury to hear the victim's preliminary hearing testimony. First, the victim gave her preliminary hearing testimony while she was under an oath to tell the truth. Second, an attorney represented Appellant and was present when the victim gave her preliminary hearing testimony. Third, Appellant's attorney cross-examined the victim. Fourth, Appellant has failed to indicate that his cross-examination of the victim at trial would touch on a new line of inquiry. Appellant has indicated only that the victim's credibility, which was the focus of his cross-examination at the preliminary hearing, would have been the primary target of his cross-examination at trial. In addition, the corroborating testimony given by Tripp and the police officers who arrested Appellant provided the jury with a sufficient basis upon which to evaluate the truth of the victim's preliminary hearing testimony. The district court's allowance of the admission of the victim's former testimony did not violate Appellant's right to confront witnesses against him.

### Appellant's Motion for a Continuance

■ Appellant argues that the district court erred by not granting the motion for a continuance which he filed after he discovered that the victim had died. The victim died on July 28, 1989, and on August 3, 1989, Appellant filed a motion to continue his trial which was scheduled to begin four days later. The district court held a motion hearing and stated:

> As I recall we set the August 7th trial date upon agreement of all of the attorneys, and I don't see anything from [the victim's] death that would affect the investigation in the case, so I will deny the motion[.]

Appellant contends that the district court's decision was an abuse of its discretion because his entire defense depended upon his opportunity to attack the victim's credibility through cross-examination. Appellant argues that, therefore, he needed additional time to "explore other modes of defense and to investigate other avenues of defense including the identification and interviewing of other witnesses."

"This Court has consistently held that the granting of a motion for continuance is within the discretion of the trial court. The standard for review, therefore, is limited to determining whether the trial court abused its discretion by denying the continuance. Our definition of abuse of discretion, as articulated in *Martinez v. State*, Wyo., 611 P.2d 831 (1980), is well established. We also recognize that review of a court's discretionary ruling on a continuance motion is highly dependent upon individual facts and circumstances. The party who is attacking the court's ruling bears the burden of establishing the abuse of discretion. Appellant must show that the trial court's error affected his substantial rights." (Citations omitted.)

*Roose v. State*, 753 P.2d 574, 578 (Wyo. 1988) (quoting *Gentry v. State*, 724 P.2d 450, 451 (Wyo.1986)). Appellant's trial counsel entered appearances on July 13, 1989, and agreed to the August 7, 1989, trial date. Appellant and his new counsel had more than three weeks to produce favorable evidence and to develop alternative theories of defense. In addition, Appellant failed to specify material evidence which he could have produced if the district court had granted his motion for a continuance. *See Stogner v. State*, 674 P.2d 1298 (Wyo. 1984). We hold that Appellant failed to show that the district court abused its discretion when it denied his motion for a continuance.

### Abandonment

■ Appellant claims that he abandoned his attempt to commit first-degree sexual assault and that, therefore, the district court erred by not granting him a judgment of acquittal on that charge. Appellant bases his argument upon the testimony given by the victim at the preliminary hearing. During that hearing, the following colloquy occurred:

Q: Umm, what exactly did he say then once he had his pants down[?]

A: He told me to do it or else.

Q: Al[l] right.

A: And, I kept telling him no.

Q: What did he do next?

A: He pushed my head towards it.

Q: Towards what?

A: Towards his penis.

Q: How did he push your head towards his penis?

A: He just had the back of my head and was pulling me towards him.

Q: Did you fight? Did you struggle?

A: I tried. He kept pushing my head back.

Q: Al[l] right, umm, did he ever place his penis in your mouth?

A: No.

Q: What happened next?

A: Well, then I was crying and then all of a sudden he put his clothes back up and then he sat down beside me and started hugging me and telling me he was sorry and that everything was going to be all right.

Q: Did, umm, did you hear anything right before he pulled his pants back up[?]

A: No.

Q: You didn't hear anything?

A: (inaudible)

Q: What happened next after he sat down beside you and was hugging you?

A: Umm, he kept telling me everything was going to be all right and I kept telling him to go get my clothes and he said just a minute and that he would and then the door got kicked open and then I got out and ran to my closet.

W.R.Cr.P. 30(a) prescribes the criteria for granting a judgment of acquittal.

Under Rule 30(a), Wyoming Rules of Criminal Procedure, a trial court shall order the entry of a judgment of acquittal upon motion if the evidence is insufficient to sustain a conviction. The trial court must assume that the State's evidence is true and must give the State the benefit of all legitimate inferences. A reviewing court can only overrule the denial of a motion for acquittal when there is no substantial evidence from which reasonable persons could say that the defendant is guilty beyond a reasonable doubt.

" 'Our responsibility in considering the propriety of a ruling on a motion for judgment of acquittal is the same as that of the trial court. * * * It is proper to grant a motion for judgment of acquittal only if there is no substantial evidence to sustain the material allegations relating to the offense that is charged.' " *Haight v. State*, Wyo., 654 P.2d 1232, 1236 (1982) [ (quoting *Aragon v. State*, 627 P.2d 599, 602 (Wyo.1981)) ].

*Dover v. State*, 664 P.2d 536, 537 (Wyo. 1983). We must determine if the record is void of substantial evidence which sustains the State's allegation that Appellant committed attempted first-degree sexual assault.

The elements of first-degree sexual assault are set out in § 6–2–302. That section provides in pertinent part:

(a) Any actor who inflicts sexual intrusion on a victim commits a sexual assault in the first degree if:

(i) The actor causes submission of the victim through the actual application, reasonably calculated to cause submission of the victim, of physical force or forcible confinement;

(ii) The actor causes submission of the victim by threat of death, serious bodily injury, extreme physical pain or kidnapping to be inflicted on anyone and the victim reasonably believes that the actor has the present ability to execute these threats[.]

Wyo.Stat. § 6–2–301(a)(vii) (1988) states:

(a) As used in this article:

* * * * * *

(vii) "Sexual intrusion" means:

(A) Any intrusion, however slight, by any object or any part of a person's body, except the mouth, tongue or penis, into the genital or anal opening of another person's body if that sexual intrusion can reasonably be construed as being for the purposes of sexual arousal, gratification or abuse; or

(B) Sexual intercourse, cunnilingus, fellatio, an[i]lingus or anal intercourse with or without emission.

Section 6–1–301 states:

(a) A person is guilty of an attempt to commit a crime if:

(i) With the intent to commit the crime, he does any act which is a substantial step towards commission of the crime. A "substantial step" is conduct which is strongly corroborative of the firmness of the person's intention to complete the commission of the crime; or

(ii) He intentionally enga;res in conduct which would constitute the crime had the attendant circumstances been as the person believes them to be.

(b) A person is not liable under this section if, under circumstances manifesting a voluntary and complete renunciation of his criminal intention, he avoided the commission of the crime attempted by abandoning his criminal effort. Within the meaning of this subsection, renunciation of criminal purpose is not voluntary if it is motivated, in whole or in part, by circumstances, not present or apparent at the inception of the person's course of conduct, which increase the probability of detection or apprehension or which make more difficult the accomplishment of the criminal intention. Renunciation is not complete if it is motivated by a decision to postpone the criminal conduct until a more advantageous time or to transfer the criminal effort to another but similar objective or victim.

In *Haight v. State*, 654 P.2d 1232 (Wyo. 1982), we stated that a defendant could not abandon an attempt to commit a crime if his cessation of criminal activity was motivated, at least in part, by the belief that a circumstance existed which made the consummation of the crime more difficult. In that case, the evidence supported the inference that the defendant, who knew that the victim had not consented to a sexual intrusion, stopped his attempt to commit first-degree sexual assault because the victim refused to open her mouth. We held that the jury could infer that there "were no

'circumstances manifesting a voluntary and complete renunciation of his criminal intention.' " *Id.* at 1242.

Giving all legitimate inferences to the State, we hold that the record is not void of substantial evidence from which reasonable persons could say Appellant is guilty beyond a reasonable doubt. A jury could infer that the victim had not consented to a sexual intrusion and that Appellant abandoned his attempt to commit first-degree sexual assault because the victim refused to open her mouth or because he heard the police entering the apartment. The district court did not abuse its discretion by denying Appellant's motion for a judgment of acquittal.

■ Appellant also argues that the district court gave an erroneous instruction to the jury on the issue of abandonment. After the court presented three abandonment instructions to the jury which primarily quoted § 6–1–301, it gave the following instruction:

> Abandonment is a defense if the attempt to commit a crime is freely and voluntarily abandoned before the act is put in process of final execution and where there is no outside cause prompting such abandonment.

At trial, Appellant did not object to the instruction. In fact, Appellant used the instruction to argue that he was entitled to a judgment of acquittal. Therefore, we must examine his claim under our plain error doctrine. W.R.Cr.P. 49(b); W.R.A.P. 7.05; W.R.E. 103(d); *Ramos v. State,* 806 P.2d 822 (Wyo.1991); *Bradley v. State,* 635 P.2d 1161 (Wyo.1981); *Leeper v. State,* 589 P.2d 379 (Wyo.1979). Our determination of whether plain error exists is subject to the following three-part test:

> First, the record must be clear as to the incident which is alleged as error. Second, the party claiming that the error amounted to plain error must demonstrate that a clear and unequivocal rule of law was violated. Finally, that party must prove that a substantial right has been denied him and as a result he has been materially prejudiced.

*Bradley,* 635 P.2d at 1164. Appellant has failed to demonstrate the existence of plain error because he has not shown that the record clearly establishes the breach of an unequivocal rule of law. *See Bland v. State,* 803 P.2d 856 (Wyo.1990).

### The Jury Instruction for Aggravated Assault and Battery

With his final issue, Appellant asserts that the district court committed reversible error under the plain error doctrine when it instructed the jury on the elements of aggravated assault and battery. Specifically, Appellant contends that the district court erred by not instructing the jury on the definition of a threat.

■ The district court has the duty to instruct the jury on the general principles applicable to the case. *Sanchez v. State,* 751 P.2d 1300 (Wyo.1988). The court is not required to define a term unless it has a "definite, technical meaning under the law different from the ordinary meaning and which the jury might therefore not understand." *Durham v. State,* 422 P.2d 691, 692 (Wyo.1967). The term "threat" is not such a term, and the instructions provided by the court adequately informed the jury of the elements of aggravated assault and battery. Plain error does not exist.

Affirmed.

URBIGKIT, Chief Justice, dissenting.

Much of what we do in justification for affirming a criminal conviction is apply a default or counsel failure concept to the legal services provided for the appealed case while creating a quagmire or mine field for defense counsel in future cases who fail to inform themselves fully about current developments in the law. *See* Annotation, *Admissibility or Use in Criminal Trial of Testimony Given at Preliminary Proceeding by Witness Not Available at Trial,* 38 A.L.R.4th 378 (1985), and other annotations therein listed. This is such a case which *sub silentio* will repeal significant Wyoming case law involving the function of the preliminary hearing and at the same time establish new requirements for the defense attorney to meet criteria

for adequate performance of legal services in criminal cases.

By the result now introduced into the product of preliminary hearings, this majority also preclusively mandates rights which counsel can demand to permit sufficiency of examination at the preliminary hearing. This case establishes a due process right and obligation for defense counsel at preliminary examination to develop not just discovery, but trial quality deposition type evidence.[1] *Cf. Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); and *Pointer v. State of Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

I would conclude that cross-examination at the preliminary hearing, since the testimony may be used at trial, cannot be any more limited than would constitutionally be the case when presented at the trial itself. Furthermore, since the prosecution can "put evidence in the can" by preliminary hearing examination, no minimized right for the defendant to protect against his own potential witness's death or disappearance can be properly asserted as a diminishment of equivalency in trial presentation at the preliminary hearing.

Finally, competency and sufficiency of trial conduct by defense counsel will now require application of legal effort to the examination of each witness at a preliminary hearing with the expectancy that the same testimony may thereafter be read back to the jury in a future criminal trial. Waiting to cross-examine until trial may, at the preliminary hearing, result in waiver by the negligent or inexperienced counsel of the accused's fundamental right of confrontation and cross-examination.

I would be more comfortable if the majority had clarified for the practicing bar how this case changes past law regarding the function of the preliminary hearing and then establishes realistic standards for adequate performance of criminal defense counsel in future cases.[2] Since this majority did not, I will.

It should be recognized without dispute that the potentiality of the general availability of preliminary hearing testimony for trial evidence equivalently requires preparation and trial attention in conduct of a proper and complete cross-examination. Additionally, when counsel is unsure of a defense witness's future trial availability, presentation and use at a preliminary hearing, if one is held, might be required to demonstrate the exercise of adequate planning and reasonable strategy for the defense counsel.

This majority presently ignores what has been very well established—that examining commissioners have severely limited defense counsel examination and evidentiary presentation at preliminary hearings. Since this decision assumes that a right to confrontation did exist, I presume that the right to confrontation will be provided which requires that the entire structure of the preliminary hearing cannot escape alteration in concept and conduct.

Peering into the looking glass, I anticipate a different thesis to be attempted. *Cf. People v. Whittaker,* 187 Mich.App. 122, 466 N.W.2d 364 (1991). I answer that subterfuge in advance. By further result orientation in hearing conduct and appellate review, it could be said that the only time when constitutional issues of confrontation occur as a result of a preliminary hearing is at trial when, in retrospect, offered introduction can then effectively raise the inappropriateness of the earlier limitation of defendant's right to cross-ex-

1. As an illustration, see the video tape preliminary hearing evidence documented like a deposition in *Ready v. State,* 574 So.2d 894 (Ala.Cr. App.1990). The prosecution took no chances about the injured victim's inability to attend the trial. The victim could not attend and the trial court permitted the use of the video tape to assure the conviction.

2. This change should not come unannounced in concept. We had already established that there was no such thing as a limited one use only discovery deposition. *Reilly v. Reilly,* 671 P.2d 330 (Wyo.1983). *See also Waggoner v. General Motors Corp.,* 771 P.2d 1195 (Wyo.1989). Now we clarify that equally with determination of probable cause, the preliminary hearing serves to create recorded evidence which may be thereafter introduced at trial.

amination. *Com. v. Tyler*, 587 A.2d 326 (Pa.Super.1991). Consequently, the initial examining commissioner might be tempted to say that he has no duty to meet this constitutional responsibility and the only remedy for failure comes by presentation of the written product of his preliminary hearing if attempted thereafter at trial. *Cf. State v. McClanahan*, 14 Kan.App.2d 410, 792 P.2d 355 (1990).

So that there is no misunderstanding, I specifically and totally reject that destructive abrogation of the constitutional effect of confrontation. It is to be said that since we bite the bullet here, we should also anticipate the taste of powder.[3]

I approach a review of the history of Wyoming law with the sure and certain conviction that no matter how we write this court's rules of procedure, a civil litigant should not be provided greater rights in procedural due process and equal protection than is provided to the criminally charged defendant. We should set a standard for fairness in court access and procedure that equally benefits and charges litigants when personal liberty or life is at stake as we provide when money or property is the only issue presented for court decision. The provision of Wyo. Const. art. 1, § 6 does not differentiate "life, liberty or property."

The initial case on this subject for preliminary hearings with usage of the filed information instead of grand jury indictments is *State v. Vines*, 49 Wyo. 212, 54 P.2d 826 (1936). That case was based on a thesis of denial of information to the defendant and serves little function today but the obsolete rule that the preliminary hearing could not be used to secure "a disclosure of the state's evidence in order that he [the accused] might prepare his defense." *Id.* at 828. That trial by ambush case is outdated today by any criteria and clearly, if this case is constitutional, then *Vines* has to be effectively superseded in future operations of the preliminary hearing. As I shall discuss later, the comprehensive case law of the United States Supreme Court is that if evidence at the preliminary hearing is to be admissible at a trial, opportunity to develop that evidence fully at the preliminary hearing by confrontation, including cross-examination, must be provided. *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

The majority cites three cases which fit into the basket originally prepared by *Vines* and deserve attention in order to examine the scope of the existent law to determine how it must be changed. The most significant is *Rodriguez v. State*, 711 P.2d 410 (Wyo.1985), where Chief Justice Thomas, in special concurrence, anticipated scholastically the present decision. He said there:

> I would adopt a rule to the effect that testimony from the preliminary examination is admissible at trial assuming the conditions of Rule 804(b)(1), Wyoming Rules of Evidence, are met. The defendant would have an opportunity to show good cause to the court that the prior testimony should not be admitted because of a manifest injustice arising out of the circumstances. The greater certainty would be helpful to counsel who would know that if they perceive any advantage to the client at cross-examination, they should pursue it at the preliminary examination. They would understand that the prior testimony would be admissible at trial, and the burden would

---

**3.** Within philosophic due process concepts, it is not necessary to reject what should be accomplished by this case as long as it is not to be another one-sided result benefitting prosecution and deterring defense. If defense counsel has the right to a proper preliminary hearing examination and presentation not deterred by inane reference to limited examination or non-incursion into contended discovery, then this case will serve well the search for truth and delivery of fact finding for the justice delivery system. However, if this case affects only trial admis-

sion and does not delineate and protect initial preliminary hearing presentation, we hypocritically add another result-oriented prosecution directed adaptation into the standards of our criminal prosecution system. The entire process of demeaning preliminary hearing cases, hereinafter discussed, should have been by this decision noted as summarily superseded or, in significant part, overruled. Particularly, see *Weddle v. State*, 621 P.2d 231 (Wyo.1980) and *State v. Vines*, 49 Wyo. 212, 54 P.2d 826 (1936).

be upon the defendant to explain why it should not be admitted. In most cases the result would be no different from the result of the majority opinion in this case except that counsel would know that they could not forego cross-examination with the expectation of relying upon the lack of cross-examination to defeat the admissibility of the prior testimony at trial.

*Id.* at 416.

The principal issue then addressed in *King v. State*, 780 P.2d 943 (Wyo.1989) was unavailability. However, in *King*, this court spoke against a per se rule recognizing admissibility which I find we have now clearly adopted in this case. The witness for *King*, in preliminary hearing, had been called and initially examined by the defendant. Unfortunately, the results were like that which sometimes happens in depositions—quite unfavorable. *King* lead past *Rodriguez* to this case to now provide a clear unavailability witness admissibility rule essentially identical to civil litigation depositions.

*Grable v. State*, 649 P.2d 663 (Wyo.1982) was an unavailability case where whatever had been done for cross-examination, sufficed to provide compliance with confrontation.[4] Evidence is not hearsay under the province of W.R.E. 804 if it was actually developed by deposition or, in this case, by preliminary hearing for the express purpose or option to be available for trial. We

---

**4.** Considering the morass that availability has created in the Wyoming cases and those of the United States Supreme Court, I lack persuasion that the subterfuge should not be abandoned and this court expressly adopt the civil rule that if a reasonable opportunity to prepare for the preliminary hearing has been provided and an adequate opportunity for cross-examination afforded, the testimony of the witness can be used at trial by *either party* if the witness is not located within the criteria of W.R.C.P. 32. We should call it what it is—anticipatory preparation of trial evidence by examination at the preliminary hearing as a second function in addition to the determination constitutionally required that basic criteria for requirement to stand trial by a demonstration of probable cause has been proved. *See King*, 780 P.2d 943; *Grable*, 649 P.2d 663; *Mancusi v. Stubbs*, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972), and *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), compared with *Berger v.*

should abandon the accidental acquisition concept and expressly recognize an intentional preparatory function and result in the preliminary hearing. In essence, the deposition used in *Martinez v. State*, 611 P.2d 831 (Wyo.1980) should serve identically with the preliminary hearing testimony provided and adequate examination opportunity afforded. *Pointer*, 380 U.S. 400, 85 S.Ct. 1065.

Having found reason presented why *properly taken* preliminary hearing testimony should be equally available with civil depositions, why does my concern continue? It is devolved from the heritage of *Vines* and enhanced with sure knowledge and a course of current cases of what the examining commissioners actually do in limitation of proper confrontation. This case should supersede the whole series of limiting decisions expressly and totally by displacement and invalidation. *Roberts*, 448 U.S. 56, 100 S.Ct. 2531.

Since we now assure right to a preliminary hearing for felony charges and the assistance of counsel, *Hurst v. State*, 563 P.2d 232 (Wyo.1977); *Adams v. Illinois*, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972); *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), no significant displacement will occur if validity and confrontation is available at the preliminary hearing session pursuant to W.R.Cr.P. 7.[5] *Campbell v. State*, 589 P.2d

---

*California*, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1968) and *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). Then see *Green*, 399 U.S. 149, 90 S.Ct. 1930.

**5.** (a) *Right to a preliminary examination.*—In all cases triable in district court, except upon indictment, the defendant shall be entitled to a preliminary examination. He should not be called upon to plead at the hearing. If the defendant waives preliminary examination, the commissioner shall forthwith hold him to answer in the district court. If the defendant does not waive the preliminary examination, the commissioner shall schedule a preliminary examination. Such examination shall be held within a reasonable time but in any event not later than 10 days following the initial appearance if the defendant is in custody and no later than 20 days if he is not in custody. With the consent of the defendant and upon a showing of good cause, taking

358 (Wyo.1979) teaches that the defendant must be present and, consequently, the process is properly provided the rights of witness usage. Confrontation and cross-examination must also be available to defendant. See an informative and comprehensive history of confrontation in Wigmore, *Of Confrontation: The Right Not to be Convicted on the Hearsay Declarations of an Accomplice*, 1990 Utah L.Rev. 855 (1990).

The layman justice of the peace issue described in *Thomas v. Justice Court of Washakie County*, 538 P.2d 42 (Wyo.1975) provides no insurmountable obstacle even with layman justices of the peace still remaining in Wyoming, provided old habits are abandoned in order that a fair hearing is provided or otherwise the preliminary hearing should be sent back by the district judge to be done correctly. The thesis of *Thomas* cannot, of course, be retained if the broadened function of creating trial evidence with access to actual confrontation is not provided. This case philosophically supersedes if not explicitly overrules *Thomas.*

*Richmond v. State*, 554 P.2d 1217 (1976), *reh'g denied* 558 P.2d 509 (Wyo.1977), which involved magistrate shopping for a second hearing and more adequate preparation by the prosecutor, is of no moment here. *Weddle v. State*, 621 P.2d 231 (Wyo. 1980), which denigrates cross-examination for constitutional purposes and denies confrontation, must also be explicitly considered to be superseded by this present decision. The concept advanced that "[t]he value of cross-examination at a preliminary hearing is questionable inasmuch as hearsay evidence is admissible" fulfills neither logical analysis nor constitutional criteria if

what happens at that time is subject to use for trial evidence at trial. *Id.* at 239. This is particularly so since this majority now impresses a waiver concept if active cross-examination was deliberately (or accidentally) not pursued: "In this case, Appellant had the opportunity to cross-examine the victim. * * * The district court did not limit the cross-examination."

In that regard, the motive analysis of this majority requires consideration. As the law is now developed from this case, the motive for cross-examination at the preliminary hearing is competency of counsel in preparation of testimony which may be used not only for probable cause at the preliminary, but also for guilt "straight out of the box" at trial. It is best said in simplistic terms in the Boy Scout motto, "Be prepared."

I would consign *Haight v. State*, 654 P.2d 1232 (Wyo.1982) to the scrap heap of discarded decisions on the subject of preliminary hearings with recognition of its essential message—inadequate preparation and incompetency of counsel. If the case retains present validity, it comes by recognition of the right of the accused to have the complaining witness present for examination by subpoena at the preliminary hearing. That might not be an unmixed blessing in trial result for the defendant since here, if the complaining witness had not testified at the preliminary hearing live and in person, that testimony would not have been available to seal his conviction when the witness's death occurred before trial.

No logical basis is presented to accept the denied continuance decision at the preliminary hearing addressed in *Haight* to subpoena the then first found unavailable

---

into account the public interest in the prompt disposition of criminal cases, time limits specified in this subdivision may be extended one (1) or more times by a commissioner. In the absence of such consent by the defendant, time limits may be extended by a judge of the district court only upon a showing that extraordinary circumstances exist and that delay is indispensable to the interests of justice.

(b) *Probable cause finding.*—If from the evidence it appears that there is probable cause to believe that an offense has been committed and that the defendant committed it, the com-

missioner shall forthwith hold him to answer in district court. The finding of probable cause may be based upon hearsay evidence in whole or in part. The defendant may cross-examine witnesses against him and may introduce evidence in his own behalf. Objections to evidence on the ground that it was acquired by unlawful means are not properly made the preliminary examination. Motions to suppress must be made to the trial court as provided in Rule 16 and Rule 40(e).

W.R.Cr.P. 7.

complaining witness. If this should occur to the prosecution, a couple of clear alternatives are available which would provide time to seek the same remedy for prosecution. Within the application of the principles of "fair opportunity" as a search for justice, but considering the real world of limited preparation time by public defenders and trial surprises inevitably occurring, the message now provided by this case is well defined. Be prepared!

Again, it would be appropriate to conclude that *Wilson v. State*, 655 P.2d 1246, 1253 (Wyo.1982) is also explicitly overruled to the extent that it states "[t]he only purpose of a preliminary hearing is to determine if probable cause exists to believe that an offense has been committed and that the defendant charged has committed it." *See People v. King*, 412 Mich. 145, 312 N.W.2d 629 (1981). To the extent that witnesses are presented, since the testimony adduced may later reappear at trial, the preliminary hearing is converted in essence into something essentially like a deposition session in the normal civil case. In addition to what is called a bind-over hearing in some jurisdictions, *State ex rel. McCaffrey v. Shanks*, 124 Wis.2d 216, 369 N.W.2d 743 (1985), the preliminary hearing becomes a defined stage in trial preparation for both prosecution and defense. Consequently, this case now also overrules *Wilson* in its textual contention on the subject. *Garcia v. State*, 667 P.2d 1148 (Wyo.1983), to the extent that it follows *Wilson* and for the same reasons of present invalidity on the subject of right to present witnesses at the preliminary hearing, must also be considered to be superseded. Recognizing one purpose of the preliminary hearing to be constitutional in determination of probable cause, the majority has now established another to be trial preparation and the acquisition of possible evidence admissible at trial.

There are two other cases which I find to be unaffected by this present major restructuring of the Wyoming criminal process and proceedings relating specifically to conduct at the preliminary hearing. *Hennigan v. State*, 746 P.2d 360 (Wyo. 1987), Urbigkit, J., dissenting, can be confined to its actual subject of grand jury indictment and *State v. Carter*, 714 P.2d 1217 (Wyo.1986), Urbigkit, J., dissenting, although addressing a subject confining the function of the examining commissioner, with which I did not then and do not now accept, cannot preclude effective judicial administration by the examining commissioner now required to perform the assigned function created by this case.

A search through the comprehensively written decisions of the United States Supreme Court relating to confrontation and preliminary hearing evidence authenticates an unsolved problem created by an unanswered question; namely, "why not do it right the first time?" It is that thesis I adopt to augment the preliminary hearing purpose as disjunctive to find probable cause and also to prepare for the criminal trial. The distress in due diligence diatribes and hypocritical analysis relative to the "unavailable" witness is eliminated. Result-oriented justification to affirm guilt conviction can be minimized by recognizing the statement: Be prepared—do it right the first time.

This court, in the course of its cases, has recognized but scarcely taken significant direction from the historical development on the conflicting subjects of preliminary hearing-confrontation involving limited inquiry later presented with evidentiary introduction at trial to be evidence of guilt. It is my present persuasion that we now perhaps accidentally create a solution rather than continue action to palliate the condition producing the illness in a search to make evidence available and then affirm guilt conviction. Adequate preparation insures authentication that if admissible evidence should be found for trial, its creation should, as a matter of general process, accord with rights to due process and confrontation. In specificity, this includes complete cross-examination and right to call witnesses for the defense at the preliminary hearing.

The primary requirement to reuse testimony in succeeding proceedings is traced back to *Mattox v. United States*, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895). The

*Mattox* court approved use of testimony of a deceased witness at the first trial to be admitted at the subsequent retrial. The subject was related to a preliminary hearing in *Pointer*, 380 U.S. 400, 85 S.Ct. 1065 and to confrontation in *Douglas*, 380 U.S. 415, 85 S.Ct. 1074. *Pointer* established that the Sixth Amendment right to confrontation was guaranteed by the Fourteenth Amendment in state trials and denial in preliminary hearing of the right to cross-examine vitiated right to introduce the transcript as evidence to provide conviction at trial. *Douglas* determined that confrontation includes a right to cross-examination. In *Douglas*, denial of that right required conviction reversal.

*Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968) reversed a conviction when due diligence to obtain the missing witness was not shown before preliminary hearing testimony was read into the record for jury consideration at trial. The major new development came with *Green*, 399 U.S. 149, 90 S.Ct. 1930, with its decision that the preliminary hearing testimony became admissible at trial within confrontation concepts if adequate opportunity existed to cross-examine at the preliminary hearing.

It is apparent that availability of the witness as a test causes frequent problems as seen in *Mancusi v. Stubbs*, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972). *See Green*, 399 U.S. at 172, 90 S.Ct. at 1942, where Justice Harlan concurred and Justice Brennan dissented. Thereafter, in *Dutton v. Evans*, 400 U.S. 74, 93, 91 S.Ct. 210, 222, 27 L.Ed.2d 213 (1970), Justice Harlan concurred in result when he withdrew from an availability concept called the preferential rule. *Cf. Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), where adequate cross-examination was denied and the United States Supreme Court reversed. *Davis* recognized that a primary interest constitutionally secured by confrontation is the right of cross-exam-

ination. *Id.* at 315, 94 S.Ct. at 1109–1110. *See also Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

It is finally apparent then that the circle was completed or the cross was marked, as the case may be, by *Roberts*, 448 U.S. 56, 100 S.Ct. 2531, where a minimal effort to find the unavailable witness was accepted to validate introduction of the preliminary hearing examination testimony. *Roberts* now teaches that the reliance is derived from the comfort afforded to confrontation by adequate cross-examination at the preliminary hearing. The preferential or availability concept is relegated to a near nominal significance.[6]

The synthesis to all of this is most adequately provided by the dissent of Justice Brennan in *Green* and reemphasized in a *Roberts* footnote in dissent addressing the institutional difference observable from cases between a preliminary hearing and the ultimate trial. That difference directly impacts whether adequate cross-examination is secured or permitted in any individual preliminary hearing session. Justice Brennan said:

> The Court's ruling, moreover, may have unsettling effects on the nature and objectives of future preliminary hearings. The California Court defined the problem: "Were we to equate preliminary and trial testimony one practical result might be that the preliminary hearing, designed to afford an efficient and speedy means of determining the narrow question of probable cause, would tend to develop into a full-scale trial. This would invite thorough and lengthy cross-examination, with the consequent necessity of delays and continuances to bring in rebuttal and impeachment witnesses, to gather all available evidence, and to assure generally that nothing remained for later challenge. In time this result would prostitute the accepted purpose of preliminary hearings

---

**6.** The extended number of commentary is illustrated by footnotes seven and nine in *Roberts*, 448 U.S. at 65–66, 100 S.Ct. at 2538–2539. Much more has occurred since 1980 considering hearsay and confrontation. See a most recent example in Note, *Child Abuse Trials and the Confrontation of Traumatized Witnesses: Defining "Confrontation" to Protect Both Children and Defendants*, 26 Harv.C.R.–C.L.L.Rev. 185 (1991).

and might place an intolerable burden on the time and resources of the courts of first instance." 70 Cal.2d, at 664, 75 Cal.Rptr., at 788, 451 P.2d, at 428. *Green,* 399 U.S. at 199–200, 90 S.Ct. at 1956–1957.

My answer to those expressed concerns is simple. The justice system should not be prostituted into accepting what was not by characterization what it really was. Preliminary hearing examinations should be conducted with expertise and thoroughness as would the principal doctor deposition for a medical malpractice case. Preliminary hearings should be more than a matter of form to provide a method for the initiating court to move the criminal proceedings into the trial jurisdiction. It should be recognized as what it really is—a preparatory step in trial proceeding directed both to determine whether probable cause exists and, in that process, to develop preliminarily the possible testimony which may in fact result in being presented at trial. Acceptance by the trial court and counsel that they should be prepared and have the proceeding done right will obviate the concerns addressing criticized hypocrisy and denied confrontation. If the system does not serve to answer confrontation and adequacy of counsel performance at preliminary hearing, then neither party should have available its fruits when justification might later exist for introduction within some character of an unavailability witness concept at trial.

I find justice and confrontation for future cases by decisively recognizing that we supersede and overrule characterizations about the limited and inexpert attributes of the preliminary hearing proceeding by discussion in *Wilson,* 655 P.2d 1246; *Richmond,* 554 P.2d 1217; and *Vines,* 54 P.2d 826.

Why the dissent in this case? Essentially because what we do is a retroactive adoption of a general principle adverse to the criminally accused constituting a significant procedural change. Review of the transcript of the testimony of the later deceased prosecutrix at this preliminary hearing effectively demonstrates that neither counsel, but particularly not defense counsel, anticipated what was then being done might in time become the seminal evidence for prosecution to convict in a very serious rape charge.

Although an apparently unrecognized warning had been suitably provided by Chief Justice Thomas in his special concurrence in *Rodriguez,* 711 P.2d at 416, the decisive decision now provided in this case constitutes retroactive application by abrupt change in Wyoming law, essentially *ex post facto* in function as applied here. *See* Wyo. Const. art. 1, § 35.[7] Hopefully with publication of this opinion, counsel *will always* carefully anticipate that preliminary hearing testimony may become decisive trial evidence.

Consequently, I respectfully dissent. Even more emphatically, I issue a very strongly considered warning for future conduct of criminal proceedings. A preliminary hearing is, after this case, to be more than a way station in the criminal trial journey.[8]

---

**7.** A relevant review, albeit in a civil case, regarding application of a decision retroactively was provided in the current case of *Woods v. Young,* 53 Cal.3d 315, 279 Cal.Rptr. 613, 621, 807 P.2d 455, 463 (1991):

[C]onsiderations of fairness and public policy may require that a decision be given only prospective application. * * * Particular considerations relevant to the retroactivity determination include the reasonableness of the parties' reliance on the former rule, the nature of the change as substantive or procedural, retroactivity's effect on the administration of justice, and the purposes to be served by the new rule.

See, however, for legislation *Tapia v. Superior Court (People),* 53 Cal.3d 282, 279 Cal.Rptr. 592, 807 P.2d 434 (1991).

**8.** This court has at least once in current time accepted a writ of certiorari involving the conduct of the preliminary hearing in advance of the movement of the court into district court trial. *Bowden v. State,* No. 89–189 (Wyo.

5/22/90). If realistic rights of confrontation are hereafter not provided, further resort to the same kind of remedy might not be unexpected. Certainly district court jurisdiction to remand for a more adequate preliminary hearing could

be anticipated if the district court considers that the invalidity of the preliminary hearing proceeding might endanger the validity of a subsequent trial if a verdict of guilt is thereafter rendered.